NOTT & Co. *vs.* OAKEY ET AL.

APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

Where the terms of an auction sale are changed, or new conditions imposed, from those advertised, by proclaiming them at the stand at the commencement of the sale, the purchaser is not bound by them, and a re-sale cannot be made at his risk.

A purchaser at the first sale, declining to comply with a new condition, not published in the auction bills, but proclaimed at the stand by the auctioneer, is at liberty to bid and become a purchaser at the second sale, without regard to his first bid.

This is an action on the *folle enchère*, to recover the difference between the first and second bids, made by the defendants on 300 shares of Gas Light Bank Stock.

In obedience to an order of the probate court of New Orleans, made in the succession of Wm. Nott, deceased, the Register of Wills advertised sundry bank stocks for sale. The terms published in the auction bills were "six months credit for approved endorsed notes, *or payment will be received in debts due by the succeesion, or by the firm of Nott & Co.*"

The defendants bid off and became the purchasers of 300 shares of the stock of the Gas Light Bank, at $25 50. After the sale they were told, one of the conditions was, that the purchaser should assume a stock note of $15 per share in part payment of the purchase. The defendants objected and disregarded this new condition, as it was not published in the advertisements or auction bills; but said they were ready to comply by paying in claims due by the estate.

On the refusal of defendants, a re-sale was made at their risk, and they became the purchasers again, through R. Curell, their agent, at $20 50 per share on the new terms, which were duly advertised.

The plaintiffs allege, they have lost $1614 67 on the difference between the first and second sales, for which the defendants are liable.

The Register of Wills, who made the sales, testified that when the sale was about to commence, he proclaimed from the

stand in an audible voice, that the purchasers of bank stock
would be required to assume the stock notes, in payment of the stocks purchased by them. This condition being different from those contained in the handbills distributed at the first sale, the defendants disregarded it.

There was judgment for the defendants, and the plaintiffs appealed.

*Strawbridge*, for the plaintiffs.

*L. Peirce*, for the defendants.

*Morphy, J.*, delivered the opinion of the court.

The plaintiffs seek to recover the difference between the price at which three hundred shares of the Gas Light Bank Stock were adjudicated to defendants; and that which they brought on a re-sale at public auction, on their refusal to carry into effect the first adjudication.

The record shows, that at a meeting of the creditors of the succession of Wm. Nott, and of the firm of Wm. Nott & Co., it was agreed between them, that this stock, together with divers stocks of other institutions, should be sold at a credit of six months, or payment to be made in debts due by the succession or the firm. The sale was accordingly ordered by the Court of Probates, and advertised agreeably to the deliberation of the creditors. On the day of sale, hand bills were distributed around the stand of the auctioneer, containing the same conditions in relation to the mode of payment. It appears, that when about proceeding to the sale, the Register of Wills received from some one, whom he supposed authorized to act for the estate, an additional condition, not mentioned in the newspaper advertisements, or in the handbills, but which, he says, he proclaimed from his stand in a loud and audible voice. This condition was, that the purchasers should assume their respective portions of a stock note of fifteen dollars per share. The defendants refused to assume any part of the stock note for which the three hundred shares purchased by them were

pledged, alleging that they knew nothing about this new condition, but they declared their readiness to pay in claims against the plaintiffs of whom they were creditors. Upon this refusal, the stock was again set up for sale, at the risk and for the account of defendants; but at this second sale, the new condition was duly advertised, and the defendants, through an agent, became purchasers of this same stock at a price inferior to that of the former adjudication. Under these facts the judge below was of opinion, that the defendants could not be made liable for the difference between the two sales and the costs incurred. We fully coincide in this opinion. If the defendants purchased this stock above its market price, when it was in no demand, as the witnesses testify, it is reasonable to suppose, that they were induced to do so on account of the facility held out to them by the advertisements, as to the mode of payment. Amidst the bustle and noise generally attending auction sales at the St. Louis Coffee house, a new condition announced by the auctioneer may not have been heard or properly understood. The purchase may have been made under an error created by the plaintiffs themselves, by whose direction, we must suppose, the handbills were distributed among the purchasers. The latter, engaged probably in reading them, paid but little attention to the formal announcement of the conditions by the auctioneer, which they might well have supposed to be but a repetition of those they had before them. This new condition, besides, appears in some manner to have been unauthorized. No mention of it is to be found in the *procès-verbal* of the deliberations of the creditors, or in the petition and order for the sale. It does not seem either to have been well understood by the auctioneer himself; for *Curell* who bought this stock for defendants, testifies that having indirectly heard something said about there being stock notes on it, he put the question to the auctioneer, whether it was obligatory to assume any stock notes, to which the latter replied, that he presumed it would be optional with the purchasers to do it or not. This must have led defendants' agent to suppose, that there was no absolute

Where the terms of an auction sale are changed, or new conditions imposed, from those advertised, by proclaiming them at the stand at the commencement of the sale, the purchaser is not bound by them, and a re-sale cannot be made at his risk.

change in the printed conditions, and that they would govern, EASTERN DIS.
*June*, 1841. if insisted on by the purchasers. This witness tells us, that under this impression he bought for the defendants the three NOTT & CO.
*vs.*
OAKEY ET AL. hundred shares in question ; that defendants would never have thought of purchasing them, if bound to pay any money ; but that having engagements under protest of Wm. Nott & Co:, they were desirous of liquidating the debt as proposed in the advertisements.

It is said, that under article 2590 of the Louisiana Code, the first purchaser cannot be allowed to bid at a second crying, either directly, or through the intervention of another person ; and that defendants, by purchasing at the second sale, have ratified the first.

A purchaser at the first sale, declining to comply with a new condition, not published in the auction bills, but proclaimed at the stand by the auctioneer, is at liberty to bid, and become a purchaser at the second sale, without regard to his first bid.

To this, it has been satisfactorily answered, that if defendants were not bound to execute the first adjudication under the circumstances attending it, the re-sale was not for their risk and on their account ; and that moreover the conditions of the second sale being different and more onerous than those of the first, the defendants cannot be made liable for any difference in the price obtained ; and had an equal right to purchase with any other person.

The judgment of the commercial court is therefore affirmed with costs.