JOSEPH C. CLARKE, Assignee of Jacob Zabriskie, a Bankrupt, *v.* JEAN DOMINIQUE ROSENDA and another.

The writ of prohibition is one of the means given to the Supreme Court to enable it to exercise its appellate jurisdiction; and it may be issued either before, or after judgment. C. P. 845, 846. Where judgment has been rendered by a judge not having jurisdiction, and process has issued, the order is to be directed, to the party prosecuting, and to the officer: C. P. 853.

The act of Congress of 19th August, 1841, establishing a uniform system of bankruptcy suspended, if it did not abolish, all the laws of the different States relative to insolvent debtors, taking away the jurisdiction of their tribunals, and establishing others in their place, with ample and exclusive powers over every question touching the property surrendered by a bankrupt, its sale, and the disposition of the proceeds. The State courts have, consequently, no jurisdiction, and cannot interfere between a creditor put on the list of a bankrupt and his assignee, in any matter relating to the final liquidation of the estate surrendered. The decree of bankruptcy operates as a stay of all proceedings.

The act of 19th August, 1841, contemplates, that all property surrendered by a bankrupt, whether incumbered, or not, shall be administered by the court before which the proceedings in bankruptcy are pending. A mortgagee, or other privileged creditor, does not impair his rights, by proving his debt before the bankrupt court. He cannot abstain from claiming under the bankruptcy, and proceed contradictorily with the assignee, to have the mortgaged premises sold to satisfy his debt. He must make himself a party to the proceedings in bankruptcy, and come in for his dividend under the act of Congress.

RULE by the assignee of Zabriskie on Rosenda, and the Sheriff of the District Court of the First District, to show cause why a writ of prohibition should not be directed to them, restraining any further proceedings under an order from the District Court of the First District, for the seizure and sale of certain property of the bankrupt, which had been mortgaged to Rosenda, but was subsequently placed on the list of property surrendered by the bankrupt.

GARLAND, J. Zabriskie, being indebted to Rosenda in a large

sum, executed a mortgage to him in the usual form under the articles of our code. The debt, not being paid at maturity, was renewed at different periods, as is fully stated in the case of *Rosenda* v. *Zabriskie*, 4 Robinson, 493 ; and finally executory process was issued, for the purpose of having the mortgaged premises seized and sold, according to articles 732, 733, *et seq.*, of the Code of Practice. To the execution of this order, or decree, Zabriskie made opposition, under articles 739, *et seq.*, of the Code of Practice. The opposition was tried in the inferior court, and upon an appeal to this, was remanded for a new trial. 18 La. 346. Whilst the cause was pending below, Zabriskie applied to the District Court of the United States for the benefit of the act of Congress, approved August 19th, 1841, establishing a uniform system of bankruptcy, placing Rosenda on the list of his creditors, and the mortgaged property on the inventory filed with his petition, as a part of what he proposed to surrender. During the pendency of the proceedings in the bankrupt court, Rosenda continued to prosecute his executory process, and had the lots so mortgaged advertised for sale by the Sheriff of the District Court of the First District ; when, on the 7th of October, 1842, the District Court of the United States issued an injunction, forbidding the Sheriff and Rosenda from proceeding. On the 7th of November following, Zabriskie was regularly declared a bankrupt, and Clarke appointed his assignee, who took upon himself the functions granted by law. On the 1st of December, 1842, Rosenda, notwithstanding the decree in bankruptcy, and the injunction granted by the United States' Court, took a rule on the assignee, in the District Court of the State, to show cause why the sale of the property mortgaged should not proceed, under the judgment and seizure rendered and made previous to the decree in bankruptcy. On the hearing, this rule was made absolute, and the Sheriff of the Court ordered to proceed with the sale, *in violation of the injunction issued by the District Court of the United States.*

The petitioner now represents to this Court, that the proceedings of the Sheriff, and the judgment of the District Court authorizing the same, are contrary to law, as the said court had no jurisdiction or right to take cognizance of the matter ; the proceedings of Zabriskie in the United States' Court, wherein a decree

of bankruptcy was rendered on the 7th of November, 1842, having operated a stay of proceedings against the person and property of the bankrupt, in all other courts, from the date of the application to be declared a bankrupt and the order thereon. The Judge of the District Court of the First District, is therefore alleged to be incompetent, to order the sale of property surrendered by the bankrupt.

The petitioner further avers, that he is unable to give security so as to take a suspensive appeal, and that a devolutive appeal would be an inadequate remedy ; wherefore he prays that this court will defend him from what he deems an illegal proceeding, and will issue a prohibition to the Sheriff of the District Court, to prevent him from making a sale of the lots of ground under seizure, and that the Sheriff and Rosenda may be perpetually restrained from proceeding further in the premises.

The defendants deny that this court can take cognizance of the case in its present form, and aver that it is without jurisdiction. They further aver that Rosenda has never made himself a party to the proceedings in bankruptcy in the United States' Court, and that he has a right to prosecute his claims in the State court, and to have the property sold, he having a mortgage thereon.

The question of the power of this court to issue writs of prohibition, in cases where the inferior courts exceed their jurisdiction, or are taking cognizance of causes not properly belonging to them, has been repeatedly considered, and the power is not now doubted, where a proper case is presented. It is one of the means given to enable us to exercise our appellate jurisdiction, and the writ may be issued before, or after judgment. Code of Practice, articles 845, 846. When a judgment has been given by a judge not having jurisdiction, and process has issued on it, the order is to be directed to the party prosecuting and to the officer, forbidding them to proceed. Code of Practice, art. 853. In this case, the court is asked to direct its order to the sheriff and party, and the court is unanimous in the opinion as to its jurisdiction.

Why the Judge of the District Court of the United States, has not caused his mandate or writ of injunction to be respected, is not shown, nor perhaps is it proper for us to inquire. It is possible he has not been judicially informed of the fact ; but that presents

Clarke, Assignee, v. Rosenda and another.

no obstacle to our giving the party relief, when a State officer is the instrument about to be used, for the purpose of doing a party an irreparable injury, in violation of law. If the Judge of the First District has exceeded his power and jurisdiction in granting the order in question, there is no doubt of the power of this court to arrest its execution. Although the District Court of the United States may have power to punish the officer, who infringes or violates its order, it cannot correct the erroneous judgment.

The other question to be considered, involves the proper construction and operation of the act of Congress, passed the 19th of August, 1841, "to establish a uniform system of bankruptcy throughout the United States," and the right of a class of creditors to exempt themselves from the provisions of it, unless it be for their advantage to accept of them, merely because they have a particular kind of security, to insure the payment of their debts. The question also calls upon the court to say, whether, under the bankrupt law, there is a class of creditors above it entirely, and excepted from its provisions, which profess to establish a uniform system, or whether they are bound to prosecute their claims under certain restrictions and penalties.

My understanding of the objects of the bankrupt law is, that it was as much intended to give relief to embarrassed and unfortunate debtors, as to secure creditors in their rights. The different, and in some instances oppressive, State laws in relation to insolvent debtors, were intended to be abrogated; and for the purpose of securing creditors, and liberating debtors, who should honestly surrender all they possessed, the tribunals of the United States were invested with equity powers, (according to Judge Story,) more wide and liberal than an English Chancellor was ever authorized to exercise. They possess a general equity jurisdiction; and yet it is said, that the class of creditors having no security for their debts, cannot bring in the class that have, to have justice administered to all, and the rights of each respected and enforced; and that the bankrupt cannot bring them before the court, although bound to cite them, for the purpose of procuring his discharge.

In my opinion, the erroneous conclusions to which many intelligent minds have arrived, arise from not properly discriminating

between the widely different provisions of the English bankrupt laws and our own, and the weight given to decisions made by eminent judges, under an impression that there is more analogy between the statutes in England and the United States, than really exists.  In Great Britain, the bankrupt acts are remedial statutes made for the benefit of the creditor, to enable him to coerce the surrender of the property of his debtor, and to have it applied to the payment of debts ; but with us, Congress had another and very different object in view, which was to enable the debtor, by giving up his property to his creditors, to compel them to discharge him entirely, provided he makes a complete and fair surrender.   There is in my mind a marked distinction between a voluntary, and an involuntary bankruptcy, and the consequences are, therefore, different.

The principle of voluntary bankruptcy, as understood by us, and fixed by the act of Congress, is unknown in England to this day, the provision in a recent statute being widely different from that in our act of Congress.  See act 6 Geo. IV., ch. 16, and 7 Geo. IV., ch. 57.  It was also unknown in the act of Congress of the 4th of April, 1800.  3 Laws U. S., 320.

Having premised, that the object of the late law of Congress, was to relieve debtors, to secure to creditors the proceeds of the property surrendered, and to dispense with the State insolvent laws, I will proceed to examine the different clauses of the bankrupt act, and endeavor to show, that the United States' Courts are vested with ample powers to effect all these purposes ; that consequently the State courts have no jurisdiction, and cannot interfere in a case between a creditor put on the list of the bankrupt, and the assignee, in any matter relating to the final liquidation of the estate surrendered.

The first step to be taken by a debtor about to avail himself of the benefit of the act, is, to make an accurate list of his creditors, stating their respective places of residence, and the amount due to each. An accurate inventory of his property, rights, and credits, of every kind, with a description of the location, and situation of each, and every parcel thereof, must also be made, and verified by oath. The presentation of these documents to the court, with a petition stating the inability of the party to pay his debts, is an act of

bankruptcy, and must be so declared, unless the creditors can prevent it. Sec. 1, Bankrupt law. All the property and rights of property of any and every description, real, personal, or mixed, is, from the moment an assignee is appointed, at once and by operation of law vested in him, and the bankrupt is divested of all title, without further assignment or conveyance, and the assignee is authorized to sell, manage, and dispose of the same, under the orders of the court, in the same manner as the bankrupt could have done. Sec. 3. All the creditors named in the list presented by the bankrupt, must have notice of the filing of the petition, and application for a discharge. Sec. 4. In all these proceedings we see little or no similarity to the English proceedings in bankruptcy, or to those formerly pursued in the United States. The debtor made no list of his creditors or property ; he could not acknowledge himself a bankrupt ; no notice was given to the creditors ; nor did the property vest in the assignees, until after long and tedious proceedings, and a regular deed of bargain and sale. 2 M. & S. 446. 3 Petersdorff's Abridgment, 684, *et seq.* The sections 63, 64, 65, of the act of 6 Geo. IV., ch. 16, show clearly, that the mere appointment of an assignee, did not, in England, divest the bankrupt of the legal title to the property he possessed, as under the act of Congress. The commissioners were authorized to convey the bankrupt's rights. The legal title, according to the common law, is much modified, if not changed by a mortgage upon the estate ; it is not by our law. For the purpose of protecting the liberty of the debtor, and the property surrendered for the benefit of the creditors, the Circuit and District Courts of the United States have jurisdiction, in all matters and proceedings in relation to the bankruptcy ; the proceedings are to be summary ; the courts are always open ; and the authority of the Judges extends to all cases and controversies, between the bankrupt and any creditor, or creditors, who claim any debt or demand under the bankruptcy ; to all cases and controversies between the creditors and the assignees, whether in office or removed ; to all cases between the assignee and the bankrupt ; and to all matters and things, until the final distribution, and settlement of the estate, and the close of the proceedings. All sales, transfers, and other conveyances of property and rights, can only

be made at such times and places, and in such manner as the court shall direct ; the money received is at the disposition of the court ; and, to sum up all, I repeat the remark of Judge Story, that no English Chancellor ever possessed, or exercised powers so great as those vested in the United States' Courts, with full authority and jurisdiction, to compel obedience to all their orders and decrees, either by process of contempt, or remedial writs. Sections 6, 8, 10.  I cannot imagine a more ample investment of jurisdiction than Congress has conferred on the Circuit and District Courts of the United States, and the extent of the jurisdiction proves, that the National Legislature, whilst exercising its constitutional power to establish a uniform system of bankruptcy, intended to suspend, if not to sweep out of existence the insolvent laws of the States, and the jurisdiction of their tribunals, and to establish other tribunals with ample powers, where justice should be alike administered to all, and a general system formed and controlled by a body of Judges, deriving authority from the same power that made the law.

Entertaining, as I do, the opinion that the courts of the United States have entire and complete jurisdiction over every question relating to the property surrendered by a bankrupt, its sale, and the disposition of the proceeds, I might here stop, and rely upon those tribunals exercising their powers, in conformity with the decision of the Circuit Court, recently given in the case of *Christy, Assignee, &c.* v. *The City Bank of New Orleans.* But it has been gravely contended, and argued with much ability, that although Congress has bestowed the almost unlimited powers mentioned on the United States' Courts, and intended to suspend, if not abolish all State insolvent laws, yet there is a large class of creditors, and a vast amount of property placed on the inventories of bankrupts, that is excepted, and remains under the care of the State tribunals.   These positions I will now examine.

It is not pretended, that there is any personal disqualification or privilege, that prevents such creditors as Rosenda, from going, or being brought into the bankrupt court, nor is there any thing in the nature or form of the contracts, that excludes them ; but the reason is, that the creditor has a particular kind of security to insure the payment of his debt, which is to be abandoned if he

appears in obedience to the summons or notice given him, which security can only be made available in a State tribunal, unless the creditors choose to present the matter in a certain mode to the United States' Court. It has always appeared to me remarkable, that Congress, if it intended that all creditors having securities by mortgage, pledge, or lien of any description, should stand out of court at their pleasure, should not have made some more explicit provision for their government, and for the disposition of much the largest portion of the property bankrupts would be likely to surrender; and as to the mode by which the bankrupt should obtain a discharge, that would be operative against such creditors afterwards. It seems to me a strange anomaly, that the law should require of the party asking to become a bankrupt, to furnish the names and residence of all his creditors, with a description of all his property, and that such creditor must be notified of the application, but when cited is not bound to appear, or if he does appear in the bankrupt court, is obliged to surrender a portion of his rights. The consequences to which the doctrine contended for, will assuredly lead, are so pernicious and inconvenient, that it is impossible for me to believe it sound; and, I repeat, that it is founded upon decisions made in the English tribunals, under laws widely different from ours. To enumerate all their discrepant provisions would occupy too much space; but I cannot omit noticing a few.

By the English statute of bankruptcy, 6 Geo. IV., c. 16, sec. 81, it is enated that all executions and attachments, against lands and tenements, or goods and chattels, *bona fide* executed or levied more than two months previous to the issuing of the commission shall be valid, notwithstanding the act of bankruptcy, provided the person issuing it had no notice of the act of bankruptcy. The English books are full of cases brought by the assignees against the creditors, to recover from them money made on execution after the act of bankruptcy was known. 3 Petersdorff's Abridgment, 806. 2 Bl. Rep. 827. 1 H. Bl. 665. Actions of trover have been repeatedly maintained to recover the goods seized after the act of bankruptcy was known, not only against parties to it, but against the Sheriff who executed the process. 3 Petersdroff, 815. 1 Bl. Rep. 65. 1 Lev. 173.

A right of distraining for one year's rent, immediately preceding the date of the commission, is reserved by the statute in England, (6 Geo. IV., c. 16, sec. 74) ; and various other privileges or preferences are recognized by the statute, to be enforced in the ordinary tribunals, (sec. 81,) unknown to the act of Congress. The latter is, in fact, more an insolvent law, than a statute of bankruptcy ; and the attempt to combine the provisions of both, has led to doubts in what way the act of Congress is to be carried into effect.

From some personal acquaintance with the objects, which some of the framers of our bankrupt law had in view, I am satisfied, that it was their intention that all the creditors of the bankrupt should be in court, and all the property, whether incumbered or not, administered under its supervision. If such were not the intention, I see but little use in citing all the creditors, and having an inventory of the property. If conformity to the English statutes was expected, why were not their requirements inserted ? The framers of the law had all the modern British statutes before them, and we see but little conformity to them ; it is therefore fair to presume, that something different was intended.

Were it not for the provisions contained in the 5th and 11th sections of the act of Congress, I presume there would not be a doubt, that all the creditors were bound to come into the bankrupt court, and that the property should be administered under its supervision and control. The first of these sections provides, " that all creditors coming in and proving their debts under such bankruptcy, in the manner hereinafter prescribed, the same being *bona fide* debts, shall be entitled to share in the bankrupt's property and effects, *pro rata*, without any priority or preference whatsoever, except only for debts due by such bankrupt to the United States, and for all debts due by him to persons who, by the laws of the United States, have a preference, in consequence of having paid moneys as his sureties, which shall be first paid out of the assets ; and any person who shall have performed any labor as an operative in the service of any bankrupt, shall be entitled to receive the full amount of the wages due him for such labor not exceeding twenty-five dollars." This section further provides, that " no creditor or other person, coming in and proving his debt or other claim shall be allowed to

maintain any suit at law or in equity therefor, but shall be deemed thereby to have waived all right of action and suit against such bankrupt ; and all proceedings already commenced, and all unsatisfied judgments already obtained thereon, shall be deemed to be surrendered thereby." It was the intention of the law-maker, in this section, to do a variety of things ; *first*, to establish a mode of distribution to be pursued in the bankrupt court ; *secondly*, to direct specially a certain preference to be given to debts owing to the United States, or persons claiming under them ; and *thirdly*, to create a privilege previously unknown to the laws of the United States in favor of laborers. It was further intended to prevent any creditor from suing for his debt in another court, or prosecuting a judgment already obtained by execution or otherwise, after having received his share of the assets. But nothing is said of any forfeiture of his legal rights, securities, or privileges. They are secured and controlled by the last proviso of the second section, which says, that "nothing in this act contained, shall be construed to annul, destroy, or impair any lawful rights of married women, or minors, or any liens, mortgages, or other securities on property, real or personal, which may be valid by the laws of the States, respectively, and which are not inconsistent with the provisions of the second, and fifth sections of this act." To give this proviso effect, it is contended, that a mortgage creditor must not go into the bankrupt court at all. If he do, and prove his debt there, it is said, that he loses his preference ; and this idea is founded upon a practice, and decisions based on a statute, that contains no such exception. My opinion is, that the object of this proviso, was to regulate the rights of the parties in the bankrupt court, and to prevent the multiplication of suits, and the prosecution of demands before different tribunals. *That* I am certain, was the object of some of the framers of the bankrupt law, and I see no reason why the rights and privileges of mortgagees, and other creditors having liens, cannot as well be adjusted in the United States', as in the State courts. It appears to me as rather technical to say, that because a mortgage, or privilege creditor, alleges that he has a mortgage or other security, he thereby forfeits it.

The 11th section of the act is further relied on to prove more

conclusively, that the mortgagee is not bound by the proceedings in bankruptcy. It says, " the assignee shall have full authority, by, and under the order, and direction of the proper court in bankruptcy, to redeem and discharge any mortgage, or other pledge, or deposit, or lien upon any property, real or personal, whether payable *in præsenti*, or at a future day, and to tender a due performance of the conditions thereof." This clause does not seem to me necessarily to exclude the mortgage creditor from the bankrupt court; but on the contrary to assume, that he is in court, and that he insists upon the execution of his rights, in a manner that the assignee may deem injurious to the interests of the other creditors, in which case power is given to the District Judge, to direct a portion of the funds belonging to the creditors who possess no privileges, to be applied to the redemption of the mortgage or lien ; or such a proceeding may be necessary, where the property is neither in the possession of the bankrupt nor his assignee ; or where the legal title is vested in the creditor, as is the case with mortgages in England, and in those States where the common law prevails ; or where a qualified property exists, as in the case of a pawn or pledge. This view of the case is sustained by an examination of sec. 70 of the act of 6 Geo. IV., ch. 16, and Archbold's notes on the statute, 129, 130, and the authorities he cites, and from the constitution of the English tribunals emanating from the same authority, and not, as ours, deriving their power from separate sources.

I have not seen any decision of an English court since the act of 1 and 2 William IV., ch. 56, which created a bankrupt court, and specially vests all the property in the assignee, and therefore cannot tell whether the previous decisions have in any degree been modified or altered. The decisions of Judge Story and others, as quoted from the different numbers of the Law Library, and newspapers, are not in my opinion entirely correct, being based upon precedents and decisions, under the old English statutes relating to bankruptcy.

If it be permitted to the creditors of a bankrupt, secured by mortgage or privilege, to stand out of the bankrupt court, as long as they think proper, and prevent the property surrendered from

being sold, it would have the effect of enabling them to delay the administration, and final settlement of the estates of bankrupts, in contravention of the 10th section of the act of Congress, which provides for their prompt liquidation and settlement.   To this it is answered, that the assignee may sell the property surrendered, subject to the mortgage or lien existing, or, in other words, sell the equity of redemption.   To this mode of selling property, I see many objections ; and very few cases would arise in which injury would not result to the mortgagees or ordinary creditors. Take the case now under consideration as an example.   The amount actually owing by Zabriskie, is in controversy, and in the present state of the case it is impossible to fix any sum, for which the property can be sold.   It is therefore proper that the rights of Rosenda should be examined and settled, contradictorily with those whose interests are so closely connected with his.

Many cases can be supposed in which it would be very difficult, if not impossible, to carry out the idea of selling the property subject to the lien or mortgage.   Take the case of a judicial mortgage, which operates on all the immoveable property of the bankrupt ; or the legal mortgage and privilege, which a married woman has for the restoration of her dotal property, which extends not only to immoveables but moveables.   There would, in such cases, be no mode of disposing of the property, but by selling the whole estate at once ; which could not result otherwise, than in injurious consequences to all the ordinary creditors.   Considering the embarrassments, delays, and difficulties that will result in the settlement of bankrupt estates, from permitting a portion of the creditors to stand out of court, and prevent the property from being sold by the assignee, I am obliged to conclude, that they have no such right.   The act of Congress does not give it in direct terms, and I cannot allow it upon precedents and arguments which I consider inapplicable.

SIMON, J.   For the reasons adduced by Judge GARLAND, in the opinion which he has just delivered, I adopt the conclusion to which he has arrived, on the important question submitted to our deliberation.

MARTIN, J. being interested in the question, did not sit on

the trial of this case; and MORPHY, J. concurred with the majority of the court.

BULLARD, J. dissenting. The facts which this case discloses appear to be, that Rosenda had a special conventional mortgage on certain lots, in the city of New Orleans, belonging to Zabriskie; that, before the application of the latter to be declared a bankrupt in the District Court of the United States, Rosenda had sued out of the State court, an order of seizure and sale; that after the appointment of the assignee, he was made a party to the proceeding; that the petitioner, Clarke, was appointed assignee, on the 7th of November, 1842, and that he applied to the District Court of the United States, sitting in bankruptcy, and obtained an injunction staying the proceedings of the mortgage creditor, and of the Sheriff, under the order of the State Court; that afterwards, Rosenda took a rule on the assignee in the State court which had issued the order of seizure, to show cause, why the Sheriff of the District Court of the State, should not proceed to sell the property under seizure, according to the order of the court; and that the rule was made absolute, and the Sheriff advertised the lots for sale, when the assignee obtained from this court a prohibition *nisi*.

The answer maintains the jurisdiction of the District Court of the State, and thus presents the question growing out of the late act of Congress, establishing a uniform system of bankruptcy, whether a mortgage creditor of a bankrupt can abstain from claiming under the bankruptcy, and proceed at law, contradictorily with the assignee, to have the mortgaged premises sold to satisfy his debt; or whether he be bound to make himself a party to the proceedings in bankruptcy, and come in for his dividend under the act of Congress, and according to the rules established by the bankrupt court. The assignee asserts the exclusive jurisdiction of the bankrupt court, over all the property given up by the bankrupt, and vested in the assignee, and the incapacity of any of the creditors to proceed in any other tribunal, whether *in personam* or *in rem*, and that the decree of bankruptcy operates as a stay of all proceedings. On the other hand, it is contended by the mortgage creditor, that he has never made himself a party to the proceedings in bankruptcy, has never proved his debt, and

claimed to be paid by the assignee ; but that his right as a mort-
gagee, is expressly protected by the act of Congress, and that he
has a right to proceed and foreclose his mortgage in the State
court, upon making the assignee a party to the proceedings.

My opinion is, that the mortgagee is not compelled to go in and
claim his debt under the bankruptcy ; that he may proceed wholly
independently of the bankruptcy upon making the assignee, how-
ever, a party ; and that the assignee takes no greater right in the
mortgaged premises, that the bankrupt himself had ; that is to say,
a *residuum* after paying the debt secured by mortgage coupled
with the possession.   He takes the property *cum onere*, and the
mortgage is saved by the act of Congress.   It is a general prin-
ciple, if I mistake not, that all assignees, whether conventional or
legal, take the property assigned, subject to all the equities to
which it was subject in the hands of the assignor.   The property
passes in the same condition and plight as it was possessed by
the bankrupt, in cases of legal assignment by bankruptcy.   2
Story's Equity, § 1411.   9 Vesey, 100.

The various provisions of the late act of Congress, establishing
a uniform system of bankruptcy in the United States, satisfy me
that Congress never intended to make an exception to this gene-
ral rule.   But, before I proceed to examine and compare the
different provisions of the act, I will premise, that Congress could
not, under the constitution, establish any other than a uniform
system of bankruptcy.   It could not have been the intention of
Congress to create, in the other States, a system analogous to the
common law system of bankruptcy, and in Louisiana, the *cessio
bonorum,* or *concurso de acreedores,* as known to our local juris-
prudence, and derived from that of Spain, in which all the pro-
perty of the ceding debtor is administered by a syndic, appointed
by the creditors, as their common mandatary ; in which all the
creditors, whatever may be the nature of their debts, become par-
ties, and are at the same time both plaintiffs and defendants ; in
which all suits against the debtor, are cumulated before the same
tribunal, and the syndic proceeds to reduce the property, the com-
mon pledge of all the creditors, to cash, by selling it free from
all incumbrances, on terms dictated by the creditors, and then
distributes the proceeds among all, according to their respective

ranks as creditors, whether by mortgage, special or general, or by privilege, or lien, in conformity to that complex scale existing in our code, so well calculated to entangle unwary creditors, whose honest debts are often swallowed up, and lost, amidst the hidden reclamations of wives, minors, pupils, law charges, &c., &c.; a system utterly unsuited to a commercial country, and so different from that prevailing in the other States of the Union, that a final tableau of distribution, with all its mortgages, general, special, legal or judicial, its privileges upon moveables or immoveables, either general or restricted, its law charges, fees of attorneys, of syndics, and fees of attorneys of absent creditors, and all those other devices by which all estates, whether of the living or of the dead, are deciminated, would be unintelligible out of this State.

But let us examine now, in detail, the provisions of the act of Congress. In the first place, the third section, which provides for the appointment of an assignee, and defines his powers and duties, declares, that the property vests in him *ipso facto*, " and that the assignee shall be vested with all the rights, titles, powers, and authorities to sell, manage, and dispose of the same, and to sue for and defend the same, subject to the orders and directions of the court as fully, to all intents and purposes, as if the same were vested in, or might be exercised by such bankrupt before, or at the time of his bankruptcy, declared as aforesaid; and all suits in law and in equity then pending, in which said bankrupt is a party, may be prosecuted and defended by such assignee to their final conclusion, in the same way, *and with the same effect*, as they might have been by the bankrupt." This section shows the extent of title vested in the assignee. He takes the place of the assignor. It shows also that all actions against the assignee are not necessarily cumulated before the same jurisdiction; that actions already pending, may be carried on to final judgment, contradictorily with the assignee, wholly independent of the bankrupt court.

The fifth section declares the manner in which the creditors of the bankrupt shall be paid. It provides that all creditors coming in, and proving their debts under the bankruptcy, shall be entitled to share in the bankrupt's property and effects *pro rata*, without any priority or preference whatever, except only for debts due by

such bankrupt to the United States, and for all debts due by him to persons who, by the laws of the United States have a preference, in consequence of having paid moneys as his sureties, which shall be first paid out of the assets, and next, certain operatives, to an amount not exceeding twenty-five dollars each. It will be remarked, that no provision is make for paying mortgage or privileged debts according to their rank. All who prove their debts in the bankrupt court, must share alike, with the three enumerated exceptions. Can we create another exception? Can we say that the mortgagee is compelled to come in, and that he may be preferred in the distribution of the assets to ordinary creditors? It is said, that the proviso to the second section qualifies this provision. The proviso in question, is in the following words: "That nothing in this act contained, shall be construed to annul, destroy, or impair any lawful rights of married women, or minors, or any liens, mortgages, or other securities on property, real or personal, which may be valid by the laws of the States respectively, and which are not inconsistent with the provisions of the second and fifth sections of this act."

Taking the words in this proviso in their ordinary sense, I should suppose the Legislature intended, that, notwithstanding the bankruptcy, and the vesting in the assignee of all the property of the bankrupt, yet all mortgages, privileges, and liens, previously existing, should remain unimpaired. Such, indeed, are the very words of the section—those mortgages or liens shall not be *annulled, destroyed, or impaired.* Can the right of the mortgagee be said to be *unimpaired,* when, in spite of his opposition, the assignee assumes to sell the property free from all incumbrances; to give a clear title to the purchaser; to obtain the erasure of the mortgage from the Recorder; and turns the mortgagee over to his remedy against the assignee, for such portion of the debt due him as may not be absorbed in expenses of administration—to transform the claim of the mortgagee from the *thing* to *its price,* secured by a right of action upon the bond of the assignee? And what is this right of the mortgagee? It is a *jus in re*—it gives the mortgagee a right to pursue the thing into whosoever hands it may pass. While it is admitted on all hands, that under the English bankrupt system the mortgagee may stand out, and retain

his title in, or to the mortgaged premises, it is said, that a mortgage at common law is quite a different thing from a Louisiana mortgage ; that by our law the mortgage is merely a security for the payment of money, whereas at common law, the legal title is in the mortgagee. In both systems the mortgagor retains possession—in both the mortgagee acquires a *jus in re* ; and what is that but an estate, a legal title, not *to the thing*, but *in it*. The difference is merely technical ; and Lord Mansfield never said a truer thing, in my opinion, than when he declared, that a mortgagee, notwithstanding the form, has but a chattel, and that a mortgage is only a security, and that it is an affront to common sense to say that the mortgagor is not the real owner. Doug. 610. 11 Johnson, 536.

It is further said, that the rights of mortgagees are secured in the same way as they are by the local law of the different States ; and hence it is inferred, that as the syndic, under our State system of *cessio bonorum*, would have a right to sell the mortgaged property, and distribute the price according to the rank of the creditors ; the assignee under the bankrupt law may do the same thing ; and this is what they call a saving, from being *annulled, destroyed, or impaired*, of the rights of mortgagees. This construction would be much more plausible, if the act of Congress made provision for any other than a *pro rata* distribution of the assets. I infer, on the other hand, that nothing goes to the assignee for distribution among the creditors who prove their debts, but the *residuum* after paying off the incumbrances ; and this consideration is fortified by another provision of the act, (sec. 11,) by which the assignee is authorized, by and under the order and direction of the proper court in bankruptcy, *to redeem* and *discharge* any mortgage or other pledge, or deposite, or lien upon any property, real or personal, whether payable *in præsenti* or at a future day, and to tender a due performance of the condition thereof. If it had been the intention of Congress, that the assignee should in all cases sell the mortgaged premises and distribute the proceeds as pretended in this case, why authorize him to pay off the incumbrance and redeem the property ? How can the two be reconciled ? The one implies that the mortgagor may stand aloof and require the payment of his hypothecary debt by the as-

signee ; the other that he is compelled to come in and prove his debt, and contribute, of course, his share to all the charges of the administration.   An authority in the assignee to redeem implies a corelative right in the mortgagee to *retain* until the debt is satisfied.   I cannot bring my mind to any other conclusion, than, that the assignee may either sell the equity of redemption, or the property subject to the mortgage, or that he may, if he thinks proper, redeem the property by paying off the incumbrance, and distribute the *residuum* among the creditors who prove their debts. The same end is thus attained without impairing the right of the mortgagee, and without imposing upon him any share of the charges of administration.   It is true, the matter is not free from difficulty when there are general mortgages, either legal or judicial, which operate on all the real estate and slaves of the bankrupt ; but the Code of Practice seems to me, to have made sufficient provisions for a *concurso* in such cases.

There is yet another provision of the act of Congress to be considered in this connection.   I mean that part of the *fifth* section which declares, that no " creditor or other person, coming in and proving his debt, or other claim, shall be allowed to maintain any suit at law or in equity therefor, but shall be deemed thereby to have waived all right of action and suit against such bankrupt, and all proceedings already commenced, and all *unsatisfied judgments* already obtained thereon, shall be deemed to be surrendered thereby."   Now let me suppose the case of a judicial mortgage, which is one resulting from an *unsatisfied judgment* recorded. Can the holder of such a claim prove his debt under the bankruptcy, without being deemed to have waived his judgment, and consequently his mortgage ?   I think not.

But if the act declares, that those who prove their debts under the bankruptcy, shall not maintain any action or enforce any previous judgment, does it not follow, by direct implication, that those who stand aloof, and have *unsatisfied judgments*, may rely upon them without claiming in the bankrupt court, and may retain their right of action if they choose to rely upon rights already acquired ?

And here it may not be amiss to remark, that the jurisdiction

Clark, Assignee, v. Rosenda and another.

of the bankrupt court extends to all cases and controversies, in bankruptcy, arising between the bankrupt, and any *creditor*, or *creditors, who shall claim any debt or demand under the bankruptcy* ; between such creditors and the assignee ; between the assignee and the bankrupt ; and to all acts, matters and things, to be done under and in virtue of the bankruptcy ; but it does not extend, in terms, to all the creditors, except that they are entitled to notice of the preliminary proceedings.    Those who have not proved their debts, are not to be consulted as to the discharge of the bankrupt.   It is further to be observed, that the discharge and certificate, " when duly granted shall, in all courts of justice, be deemed a full and complete discharge of all debts, contracts, and other engagements of such bankrupt, which are *proveable* under the act," not merely such as are proved.   And this expression shows that the act requires only, that the creditors shall have an opportunity to prove their demands.

But it is said, that the mortgage is but an accessary, and that it is absurd to destroy the principal obligation, and leave the mere accessary to subsist ; that, as the discharge operates as a release of all the debts, it necessarily must release all the mere securities. But it must not be forgotten, that the mortgages and liens are expressly saved and reserved.   I infer from these provisions, that the remedy *in rem* is not destroyed, or annulled, by the discharge. The remedy is saved so far as the specific property is concerned, precisely as an hypothecary action may be carried on against a third possessor, who is not liable personally for the debt.

That such is the practice under the English bankrupt system, is abundantly shown by the authorities to which our attention has been called.   Creditors holding a security are not permitted to prove, unless they will give up their security, or the value has been ascertained by a sale of it.   When the creditor thinks the property forming the security is not equal to the payment of his debt, he may apply to have it sold, and to be admitted as a creditor for the residue.   Personal securities may thus be sold, as well as an estate.   Nor can a second mortgagee be compelled to join in such sale obtained by a prior mortgagee.   The same rule applies to the right of a vendor for any part of the purchase money un-

paid, or what we call the vendor's privilege. Bankrupt Law, p. 104, 105, *et seq*.

All the commentators, whose works I have seen, upon the late act of Congress, put this construction upon it. Owen, in his Treatise on the Law and Practice of Bankruptcy, says : " When an estate has passed from the bankrupt, defeasible upon the performance of a condition, such as that created by a mortgage, the assignee has, by virtue of the decree, the equity of redemption, and may either redeem the mortgage under the direction of the court, or sell the estate subject thereto."—page 61.

So far as I have been able to learn, the decisions of the Circuit Courts of the United States, have been uniform on this point, and consonant with the views herein expressed. *In the matter of Enoch Cook*, in the Circuit Court of Massachusetts, Judge Story held that the lien of a judgment upon property attached, according to the laws of Massachusetts, was within the proviso of the second section of the bankrupt law, and saved thereby, and is wholly unaffected by the proceedings in bankruptcy, when the judgment had been obtained in the regular course, before any petition, or decree, or discharge, in bankruptcy. An injunction was, therefore, refused to stay proceedings by the judgment creditor, on his judgment in the State Court. The lien was perfect by the effect of the judgment ; and it was decided, that the assignee was not entitled to take the property, subject to the lien, but that the creditor might proceed on his judgment. " The proceedings in bankruptcy," says the court, " after the judgment, can have no effect whatever upon that judgment, or upon the property attached in that suit. The creditors have made their rights, (call it, if you please, their lien,) perfect under the attachment."

According to the doctrine here contended for, the assignee in that case would have been entitled to take the property, subject to the lien, and sell it, giving to the judgment creditor a preference to be paid out of the proceeds, after deducting a share of all the expenses of the administration of the bankrupt's assets, proportioned to the amount of the sale. This is not what I call *saving* a lien or mortgage, under the proviso of the second section. Suppose the creditor is satisfied with his investment and with his security ? Shall he be compelled to receive his money,

or a part of it, and to submit to a sale of the property, according to conditions unknown to the law when he contracted ?

I conclude that the prohibition ought to be set aside.

*Rule made absolute and prohibition granted.*