Hon. PIERRE ADOLPHE ROST,
Hon. GEORGE ROGERS KING, } *Associate Justices.*
Hon. THOMAS SLIDELL,

| 3 | 1 |
| 47 | 1496 |

## LAYTON et al., Executors, *v.* HENNEN.

The description of the property offered for sale, contained in the advertisement of a probate sale, is binding both upon the vendor and the purchaser, and neither can insist on any thing said by the auctioneer at the time of sale which in any way varies from, or adds to, the printed conditions or description of the object offered for sale. No error, caused by representations of the auctioneer at variance with the printed advertisement, will vitiate the sale.

APPEAL from the District Court of the First District, *Buchanan*, J. *Preston*, for the plaintiffs. *Moïse*, for the appellant. The judgment of the court, in this case, was delivered on a re-hearing, an opinion having been read on the first hearing, reversing the judgment below and rendering one in favor of the defendant. The final judgment was pronounced by

KING, J.* The plaintiffs, as executors, have instituted this action to compel the defendant, *Hennen*, to accept a transfer of twenty shares of the capital stock of the Carrollton Railroad and Banking Company, adjudicated to him at a probate sale of a part of the effects of *Robert Layton*, deceased, and to pay the price of adjudication. The defendant admits that he purchased twenty shares of the stock of the Carrollton Bank, at public sale, but offers as a reason why he is not bound to comply with the terms of the adjudication that, the auctioneer represented to him and to other bystanders at the sale, that the stock offered belonged to a class much more valuable than that which was

---

* EUSTIS, C. J., did not sit in this case, having been of counsel.

1

LAYTON
v.
HENNEN.

adjudicated. To understand the nature of this defence, it is necessary to state that there were three classes of stock of the company. The first consisted of shares paid in full, of the original subscription, under the act of 1833. The second, of shares of the stock created by the act of the 1st April, 1835, which, under a resolution of the board of directors, known as "*Millaudon's* resolution," were paid in full by anticipation. The third, of shares of the stock created by the last recited act, on which only $50 had been paid.

A controversy arose between *Millaudon* and the bank, in relation to the stock of the second description, which was finally determined in the Supreme Court. The case is reported in the 3d vol. of Robinson's Reports, p. 488. It is contended that the decision in that case, recognises in the holders of stock, paid in full under *Millaudon's* resolution, rights superior to those of the owners of stock paid in full under the original act of incorporation, on the final liquidation of the bank's concerns; and that the defendant was induced by the representations of the auctioneer, to believe that he was purchasing full paid stock under *Millaudon's* resolution, whereas the stock adjudicated to him belonged to the first class. The judgment of the lower court was in favor of the plaintiffs, and the defendant has appealed.

It is unnecessary to enquire whether the alleged difference between the two descriptions of full paid stock has been recognised in the case of *Millaudon v. The New Orleans and Carrollton Railroad Company.* The stock offered was described in the advertisements as "*full paid stock*," and was really such. If the fact that there were two kinds of "full paid stock" rendered the description indefinite, the purchaser should have addressed his enquiries for further information to the executors, who alone were authorised to give it. The advertisements are binding upon both the vendor and the purchaser, and neither party can insist on any thing that was said by the auctioneer at the time of sale, in any respect varying or adding to the printed conditions or the description of the object offered. Babington on Auctions, Law Lib. 18. 19 La. 18. The information in the present instance was asked of the auctioneer, in whom the law recognises no authority to give it, and who is not shown to have been authorised by the executors to furnish it.

In the absence of an express authority from the executors, no error caused by the representations of the auctioneer at variance with the printed advertisements, will vitiate the sale.

SLIDELL, J., adhered to the opinion first pronounced.[*]

*Judgment affirmed.*

---

[*] The following opinion, first read in this case, was pronounced by SLIDELL, J. The petition charges that the plaintiffs, in pursuance of authority from the Court of probates of Jefferson parish, caused to be exposed at public sale, through an auctioneer, twenty shares of the capital stock of the New Orleans and Carrollton Railroad Company, belonging to the succession of the testator; that *Hennen* became the purchaser at $62 75 a share, payable at sixty days; that they have offered a transfer of the stock, but that he refuses to receive it and pay the price; they pray that he be adjudged to receive a transfer, and to pay the price. The *procès-verbal* of the auctioneer was annexed to the petition. It sets forth the sale as follows: "Twenty shares of the Carollton Railroad at $62 75, adjudicated to *D. N. Hennen*, $1255." The defendant pleads the general denial, and pleads specially representations made by the auctioneer at the sale, which he alleges were untrue.

It was proved at the trial, and this fact is undisputed, that there are three kinds or classes of Carrollton Railroad stock. These are, the stock of the original Railroad company, being full paid, to wit, $100 a share; stock under the amended charter, half paid, or $50 a share; and stock under the amended charter full paid, or $100 per share. The subject is more particularly explained in the case of *Millaudon v. The New Orleans and Carollton Railroad Company*, 3 Rob. 488.

The first point which it is proper to consider is, what class of stock was here intended LAYTON
to be sold? Although the *procès-verbal* is entirely silent on the subject, yet it is not dis- *v.*
puted before us that the stock belonging to the succession was full paid stock. Of which HENNEN.
of the two classes of full paid stock was the stock in question? This is a matter not as-
certained either by the *procès-verbal*, nor even by the plaintiffs' petition. Was this mate-
rial? That it was so, is plain from the testimony. It is shown that, at the time of this
sale, there was a very serious difference in the market value of these two classes. The
difference was $30 a share in favor of the full paid stock under the amended charter over
the full paid stock under the company's original charter.

The question then presents itself, what did the auctioneer sell and what did *Hennen*
buy? What was the contract between these parties, the specific execution of which is
sought to be enforced by the petition, and how is it proved? For an answer to this
essential enquiry we look in vain to the plaintiffs' petition, or to the *procès-verbal* offered
in evidence. Neither of these designate whether it was the *old* or *new* stock.

It is a well settled principle that a party who seeks to enforce the specific execution of
a contract, must not only prove the contract, but the terms of the contract as proved
must be so precise as that neither party could reasonably misunderstand them. This
doctrine rests upon an elementary principle of the contract of sale. The thing sold is an
indispensable ingredient in the contract of sale, and the thing sold must be certain.
Where there is uncertainty as to the thing sold, the decree of specific performance based
upon such a contract must partake of the same uncertainty, and wants an essential
requisite of a decree. In the case before us, if a decree of specific performance be rend-
ered adjudging the defendant to pay the plaintiffs $1255, upon the transfer to the defend-
ant of twenty shares of full paid Carrollton Bank stock, what shares are the plaintiffs to
transfer? There are two kinds; one was worth in the market $30 a share less than the
other. If under this decree the plaintiffs may transfer either, the decree is both uncertain
and unequitable.

The plaintiffs' argument, when they contend that we must look to nothing but the
*procès-verbal* of sale, and cannot enlarge it by evidence of the auctioneer's declarations,
is suicidal, for no lawful decree can be based upon this *procès-verbal*. In a judicial sale
at auction, as in an ordinary sale, the seller is bound to explain himself clearly respecting
the object of the sale—the thing sold. If it be uncertain what is sold, there can be no
*aggregatio mentium*. The mind of the buyer and the mind of the seller must agree.
But no agreement can be supposed to exist when the subject of the sale is thus uncer-
tain. If, therefore, we assent to the position of the plaintiffs' counsel, and reject the
evidence of what occurred at the sale beyond the *procès-verbal*, a contract is presented
which is void for uncertainty, and no specific performance can be decreed. If, on the
other hand, it be admissible to consider this case upon the testimony of the bystanders
and the auctioneer as to what occurred at the sale, the case is still against the plaintiffs.
The weight of evidence leads us to the conclusion that what was said induced the defend-
ant to suppose that the stock was of that class the most valuable in the market, while in
fact the stock held by the succession is not of that description, but is old stock. Under
these circumstances it would be unequitable to hold the defendant to a specific perfor-
mance, and to compel him to pay the plaintiffs for their stock a price which exceeded by
$30 the market rate at which he could have purchased it at private sale from a by-
stander, who, acting under the same misunderstanding which operated upon *Hennen's*
mind, was his competitor at the sale. *Obscuritatem pacti nocere potius debere venditori,
qui id dixerit, quam emptori; quia potuit re integra apertius dicere.*

The plaintiffs have argued that in reality the rights of full paid stockholders under the
old charter are equal to those of full paid stockholders under the new charter, or, as they
are called, in the stock market, *Millaudon* stockholders; and that the public opinion to the
contrary is a delusion. It is not material to decide this question now; nor, as to the
decision in *Millaudon's* case, to express a dissent or concurrence with the opinion there
announced.

The estimation of the new stock in the market as a privileged stock in the distribution
of the bank's assets formed a material quality in the thing apparently offered for sale, and
with regard to this quality the bidders were misled. Thus, whether we confine the cause
to the *procès-verbal* of the auctioneer, or determine it by the parole evidence of his de-
clarations, in either view the case is against the plaintiffs. In the former, the sale is void
from uncertainty; in the latter, the misrepresentation bars the specific execution.