(55 South. 590.)

No. 18,249.

FIRST NAT. BANK v. POWELL BROS. & SANDERS CO., Limited.

(June 5, 1911.)

*(Syllabus by Editorial Staff.)*

RECEIVERS (§ 135*)—SALES—INCUMBRANCES—TITLE OF PURCHASER.

A sale of the property of an insolvent corporation, under Acts 1898, No. 159, § 10, empowering the court appointing a receiver of an insolvent corporation to order a sale of its property and the distribution of its assets in accordance with the rights of the parties, is a sale free from all incumbrances placed on the property by the corporation, and the proceeds must be distributed among the creditors in accordance with their rights, and where a receiver makes a sale without informing the bidders that the property will be sold free of incumbrances, and the price obtained is grossly inadequate, the sale will not be confirmed.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 231–235; Dec. Dig. § 135.*]

Appeal from Twelfth Judicial District Court, Parish of Vernon; Don E. So Relle, Judge.

Action by the First National Bank against Powell Bros. & Sanders Company, Limited. From a judgment approving a sale by a receiver of defendant, the party aggrieved appeals. Reversed, and opposition to the approval of sale sustained, and case remanded.

W. D. Gordon and Sidney I. Foster, for appellant Smith. Alexander & Wilkinson, for appellee.

PROVOSTY, J. On the petition of the receiver of the defendant corporation, an order was made for the sale of all the property of the corporation, for cash, to the highest bidder, without appraisement; that part of the property on which there were mortgages or privileges to be sold separately, and the proceeds of same to be held separate, subject to the further orders of the court. The advertisement of the sale, as published, made the following announcement:

128 LA.—31

"Said property to be sold free from any lien, mortgage or incumbrance of any nature whatever, whether placed thereon by Powell Bros. & Sanders Co., Ltd., or not; such liens, mortgages or incumbrances to be transferred to the proceeds of the sale. Terms cash to the highest bidder, without appraisement; the right is reserved to sell the foregoing property in parcels or lots, or in bulk, so as to obtain the best price possible for it."

Various mortgage and privilege creditors had filed interventions, asking that the property subject to their claims be sold separately, and the proceeds held separate, subject to their right of preference; and it was because of these interventions, apparently, that the order was made for the separate sale of those portions of the property subject to mortgages and privileges.

On the day of the sale, question arose as to whether the property would pass free from or subject to the mortgages and privileges. The attorney of some of the creditors and prospective bidders declared that he could not be positive on the point; the receiver said he did not know; but the attorney for the receiver announced, at the crying of the sale, that, in his opinion, the order of the court directing the property to be sold free from the mortgages and privileges was unauthorized and null, and that the property would pass at the sale burdened with all incumbrances.

The property consisted mainly of some 7,000 acres of timber lands, described according to the maps of the United States surveys; that is to say, mostly by figures. At the sale long lists of these lands were withdrawn from the sale, as not belonging to the corporation, but to third persons. No previous notice of this withdrawal had been given to the prospective bidders present at the sale, and this brought an additional element of uncertainty into the sale, as it was not possible for the bidders to know, except by carefully comparing the long lists of these withdrawn lands with the still lon-

ger list of the advertisement, what were the lands belonging to the corporation which would be included in the sale.

The sale was made, and the property was adjudicated to J. R. Monk, trustee. Whom Mr. Monk was trustee for, unless for the creditors in general, the record does not show.

The receiver having applied to the court for confirmation of the sale, and for authorization to make title to Mr. Monk, several oppositions were filed, on the grounds that:

"(1) That the price is grossly and shockingly inadequate and amounts to confiscation of the estate.

"(2) That the order of sale authorized and required the estate to be sold in separate parts and parcels, and the report of the receiver does not disclose the details of the sale.

"(3) That Jas. R. Monk, trustee, as attorney for the opponent, Smith, and others, occupied a fiduciary relation to him, and should have been interested alone in his interest, and others looking to him, but, as a matter of fact, it now appeared that said James R. Monk acted at said sale as trustee for other parties who were not known in the consultation had just prior to the sale.

"(4) That while the receiver was preparing to make a public offering of the property he was asked by a prospective buyer, or other person, whether or not the property was to be sold subject to existing mortgages and liens; and in that connection, J. D. Wilkinson, one of the attorneys for the receiver, answering for the receiver in a loud voice, announced publicly, that, in his opinion as a lawyer, the mortgages would follow the property into the hands of the purchaser at this sale. That the effect of this advice from said attorney deterred opponent and others attending the sale from bidding, and thus and thereby competition was eliminated from said sale.

"(5) That while said sale was being called off confidence was further taken from prospective purchasers by reason of the fact that the receiver announced publicly that certain lands, embodied in the notice of sale, approximating 5,000 acres, belonged to other parties; and the effect of this announcement was to create confusion among those attending the sale as to lands actually offered by the receiver, and consequently bidders were deterred who would have otherwise bid on the property.

"(6) That in truth said sale was not subject to said liens, but that same in law constituted a mutation of assets from the sundry properties of defendant into money, to be partitioned among the creditors as their interest may appear, after paying cost of receivership."

The court overruled the oppositions, but added that it did so "without prejudice to the rights of any holder of valid mortgages and liens to enforce the same against the property so sold in the hands of the purchasers, except in such cases where the holders of liens have asked for separate sale of property, and the proceeds arising therefrom."

The present appeal is from that judgment, and has been taken by only one of the opponents, Charles L. Smith, one of the mortgage creditors.

In support of this judgment, it is argued that: "Unless otherwise specified in the order a sale by a receiver does not release or divest existing heirs or mortgagees"—citing High on Receivers, § 199a; Alderson on Receivers, § 602; Gluck & Becker on Receivers, page 115; 34 Cyc. 320; 23 A. & E. Enc. L. 1084; Richards v. Halliday (C. C.) 92 Fed. 798; Sargent Glass Co. v. Matthews, 35 Ind. App. 45, 72 N. E. 474; Snow v. Winslow, 54 Iowa, 200, 6 N. W. 191; Lorch v. Aultman, 75 Ind. 162; Wiswall v. Sampson, 14 How. 52, 14 L. Ed. 322; Kneeland v. Am. Loan & T. Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379.

We think the case is governed by section 10 of Act 159, page 315, of 1898, under authority of which the receiver was appointed, which reads:

Sec. 10. "Be it further enacted, etc., where the court has appointed a receiver and it is made to appear that there is no reasonable ground to believe that the property of the corporation can be so administered as to pay its debts, and the possession thereof restored to the corporation, the court may on application of any party at interest, after ten days' notice of such application on the order book, if there be no opposition, or after hearing of same be opposed, order the sale of the property and the distribution of its assets in accordance with the rights of the parties in interest."

Under this act a corporation may either be administered as a going concern, or be treated as practically defunct, and all its property

sold and the proceeds distributed among all its creditors. A sale made under the first kind of administration would probably have no greater effect in disturbing the incumbrances upon the property than a sale made by the corporation when in the hands of officers of its own choice would have had. But a sale made under the second kind of administration, i. e., under the provisions of section 10, supra, when all the property is to be sold and the proceeds distributed among all the creditors, including mortgage and privilege creditors, according to the rights of each, must necessarily have the effect of raising from the property sold, and transferring to the proceeds, all incumbrances put upon the property by the corporation. Such a sale is analogous to a probate or bankrupt sale; its purpose is the same, and its effects are the same. All creditors are necessarily parties to the receivership, and entry in the order book is notice to them. "The sale made of the property to the end of paying each creditor, according to his rank and privilege, is a sale made by all." Williamson et al. v. Their Creditors, 5 Mart. (O. S.) 618–621; Vignaud v. Tonnacourt's Curator, 12 Mart. (O. S.) 229–233; Lafon's Executor v. Phillips, 2 Mart. (N. S.) 225–231.

The defendant corporation has been in the hands of a receiver for several years, and is largely insolvent, so that there can be no question but that its property must be sold to pay its debts. The costs of court and expenses of administration alone exceed by several thousand dollars the total proceeds of the sale that has been made. The property should have been sold free of all incumbrances put upon it by the defendant corporation, and the proceeds of the sale distributed among the creditors in accordance with their rights.

In the reasons for judgment of the learned trial judge, we find the following:

"In argument the attorney for the receiver contended that the sale should be confirmed, subject to the mortgages. The purchaser. contended that the sale should be confirmed by the decree of confirmation, should be silent as to the effect of the sale on pre-existing mortgages, and leave that question open for adjudication in other proceedings. Mr. Foster, the attorney for opponents that he represented, contended that the sale should not be confirmed, and in the alternative be confirmed, subject to mortgages. While the attorney for opponent, Smith, stated that, if the sale was confirmed subject to the mortgages, it would be satisfactory to his client; but, if not, then the sale should not be confirmed, or the trustee ordered to deliver the property over to the said Smith at the price and sum at which same was adjudicated to the trustee."

In the brief for the counsel for the receiver, we find the following:

"Counsel representing the opponent stated in argument in the lower court that, if the sale was approved subject to the mortgages, he would be satisfied. See opinion of lower judge. Notwithstanding that assertion so made by him, notwithstanding the sale was so approved, he is here complaining of the judgment which he declared would meet his approval, which was rendered in response to his assertion, and which in no manner injures any mortgage right that his client may have or might have had.

"It seems to us that opponent wants a fight of some kind, that he loves to litigate about nothing, and cares but little of the final result, so long as it brings him into the fray.

"Opponent was present at the sale of the property, and did not bid or offer to bid on a single piece of property. It is shown that he and his comortgage creditors were urged to bid on the property and declined. It is shown that after it was bought by Mr. Monk that he held it for some days, in order to enable the opponents and his comortgage creditors to take it, if they so desired, and they remained silent and said nothing. It is shown that, before bringing this opposition, the opponent said nothing to Mr. Monk about any desire to buy the property, and he made no claim that the purchase was for his benefit, or that he had any right to take it at the price to be paid by Mr. Monk. Under such circumstances, it appears to us that it would require a very strong case indeed to justify the court in now awarding him anything."

The answer to all this is found in the case of Clarke, Assignee, v. Rosenda and others, 5 Rob. 27, 28, where the court said:

"To this it is answered that the assignee may sell the property surrendered, subject to the

mortgage or lien, or, in other words, sell the equity of redemption. To this mode of selling property, I see many objections; and very few cases would arise in which injury would not result to the mortgagees or ordinary creditors. Take the case now under consideration for an example. The amount actually owing by Zabrisckie is in controversy, and in the present state of the case it is impossible to fix any sum for which the property can be sold. It is therefore proper that the rights of Rosenda should be examined and settled contradictorily with those whose interests are so closely connected with his.

"Many cases can be supposed in which it would be very difficult, if not impossible, to carry out the idea of selling the property mortgage, subject to the lien or mortgage. Take the case of a judicial mortgage, which operates on all the immovable property of the bankrupt, or the legal mortgage and privilege, which a married woman has for the restoration of her dotal property, which extends, not only to immovables, but movables. There would, in such cases, be no mode of disposing of the property but by selling the whole estate at once, which could not result otherwise than in injurious consequences to all the ordinary creditors."

No better illustration can be furnished of the impracticability of such a proceeding than the present case, where the bidders were completely at sea, and had not the slightest idea what they would be bidding on—in fact, would have been buying a pig in a poke. The property was appraised at $217,912.25, and was adjudicated for $27,300. The evidence acquits Mr. Monk of all intention to take undue advantage of any one; but confirmation of the sale must be refused for the reason that it was not made in conformity with the order of the court. Nott & Co. v. Oakey, 19 La. 18; Pickersgill v. Brown, 7 La. Ann. 297; Pew v. Livaudais, 3 La. 459; Layton v. Hennen, 3 La. Ann. 1; Lewis v. Lebauve, 13 La. Ann. 382; Succession of Bright, 38 La. Ann. 141; McLellan v. Rosser, 114 La. 140, 38 South. 85.

The judgment appealed from is set aside, and the opposition to the approval of the sale in question is sustained, and the case remanded for proceedings according to law.