MYRON PARDEE, Appellant, *v.* SAMUEL C. KANADY et al., Respondents.

Defendants contracted to deliver to M., plaintiff's assignor, 400,000 feet of lumber during the season of navigation of 1875. Subsequently by another contract they agreed to deliver 400,000 feet during the year 1876, on a credit of thirty and sixty days, and it was provided that in case of a breach of the previous contract, if the second contract was performed,

such breach should be excused to the extent of 150,000 feet. There was a breach of the first contract to the extent of 153,495 feet. About the opening of the season of 1876, M. assigned his property to plaintiff and then became insolvent ; the former continued the business. Defendants thereupon sold their lumber on hand and ceased to buy any more, and when applied to by M. and plaintiff to perform the second contract, although M. offered a guaranty of payment, announced their intention not to do so, giving, as a reason, the insolvency of M. and denying his right to assign the contract. In an action to recover damages for the breach of the contract for 1875, the referee found that plaintiff was at all times able, ready and willing to receive and pay for the lumber under the second contract. *Held*, that defendants were liable for the whole amount of damages; that while the insolvency of M. excused defendants from delivering lumber under the second contract on credit, and entitled them to demand payment on or before delivery, it did not abrogate the contract; and without some action on their part putting plaintiff or M. in default for not accepting and paying for the lumber to be delivered under it, they could not take the benefit of it as a defense to their liability under the previous contract.

The mere insolvency of one of the parties to an executory contract of sale is not equivalent either to a rescission or a breach, it simply relieves the vendor from an agreement to give credit, and payment may be substituted.


(Argued June 23, 1885 ; decided October 6, 1885.)


APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, made the second Tuesday of June, 1882, which reversed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover damages for an alleged breach of a contract.

The contract in question was made in February, 1875. By it defendants agreed to deliver to Pardee four hundred thousand feet of basswood lumber between April 1 and September 30, 1875, at a stipulated price. On August 28, 1875, said parties entered into another contract by which defendants agreed to furnish and deliver to said Pardee four hundred thousand feet of basswood lumber during the season of 1876, at a stipulated price, upon a credit of thirty days with privilege of sixty. This contract contained a clause to the effect that in consideration of the performance thereof by defendants said Pardee would not hold

them liable if they were short one hundred and fifty thousand feet on the contract of 1875. The further material facts appear in the opinion.

*George W. Parkhurst* for appellant. M. F. Pardee had a right of action for a breach of the first contract, but it was suspended until the refusal or failure of the defendants to supply four hundred thousand feet of lumber in 1876. (7 Wait's Act. and Def. 571; 2 Pars. on Cont. 683-685.) His cause of action for such breach was clearly assignable. (*Sears* v. *Conover*, 3 Keyes, 113; *S. C.*, 4 Abb. Ct. App. Dec. 182; *Monahan* v. *Story*, 2 E. D. Smith, 393.) The contract of August 28th was also assignable. (*Devlin* v. *Mayor, etc.*, 63 N. Y. 15; *Tyler* v. *Barrows*, 6 Rob. 104; *Platt* v. *Stout*, 10 Abb. Pr. 178; *Butler* v. *N. Y. & E. R. R. Co.*, 22 Barb. 112; *People* v. *Tioga C. P.*, 19 Wend. 77.) By the refusal of the defendants to perform the contract of August 28, the plaintiff was restored to the original rights of his assignor, as if the rescinded contract had not been made. (*Hunt* v. *Silk*, 5 East, 249; Benj. on Sales [3d Am. ed], § 145; id., note *c;* 2 Pars. on Cont. [6th ed.] 678; Willard's Eq. Juris. [Potter's ed.] 303; *Tompkins* v. *Hyatt*, 28 N. Y. 347; *Bradley* v. *Bostay*, 1 Barb. Ch. 125; *Wheaton* v. *Baker*, 14 id. 594; *Lindsay* v. *Ferguson*, 49 N. Y. 623.) Mere insolvency of a party does not rescind a contract. That can be done only by the acts or assent of both parties. (1 Add. on Cont. [Am. ed.], § 741; *New E. Ins. Co.* v. *G. El. R. R. Co.*, 91 N. Y. 155; *Freeth* v. *Burr*, L. R., 9 C. P. 208; *Bloomer* v. *Burnstein*, id. 588; *Lawrence* v. *Fox*, 20 N. Y. 268; Benj. on Sales [3d Am. ed.], §§ 772-3; 1. E & E. 680; 28 L. J. Q B. 204; *Babcock* v. *Bonnell*, 80 N. Y. 244.) Under the circumstances no tender of the price or offer to perform was necessary on the part of the plaintiff or his assignor. (*Shaw* v. *R. C. Ins. Co.*, 69 N. Y. 286; *Bunge* v. *Koop*, 48 id. 228; *Crist* v. *Armour*, 34 Barb. 378; *Sears* v. *Conover*, 4 Abb. Ct. App. Dec. 182.) Where goods are purchased for a particular market, and that is known to both parties, the damages are governed by the

price at that market. (*Hagous* v. *Ablon*, 5 Hill, 472; *Converse* v. *Prettyman*, 2 Minn. 229; *Marshall* v. *Central R. R. Co.*, 48 N. Y. 660; 2 Add. on Cont. [Am. ed.], § 589.)

*N. W. Nutting* for respondents. A radical modification of the first contract was effected by the second. (*Coddington* v. *Davis*, 1 Comst. 186.) The contractee's insolvency made the acceptances ·valueless, and the respondents were not bound to ship the lumber or fulfill the contract as the consideration had failed. (*Benedict* v. *Field*, 16 N. Y. 595; 4 Duer, 163.) An offer to pay in the acceptances of M. F. Pardee on or after April 22, 1876, when he had become insolvent, would not have satisfied the contract, nor would such an offer been good under the contract for 1876. (*Ross* v. *Merritt*, 2 Caines, 117; *Kip* v. *Monroe*, 29 Barb. 584.) A tender of money by the purchaser or his assignee might have made the respondents liable if they had refused to deliver. (*Currie* v. *White*, 37 How. 331.) The purchaser could not have maintained this action under the facts, and the assignee does not stand in any better position. (2 H. L. C. 309; 6 Taunt. 480.)

RAPALLO, J. We think that the conclusions of the learned referee as to the construction and effect of the agreement of August 28, 1875, were correct.

This agreement was not a· modification of the previous agreement of February, 1875, nor a substitute therefor; nor did it operate to extend the time for the delivery of any part of the lumber agreed to be delivered during the season of 1875; but it was an independent contract to deliver four hundred thousand feet of lumber during the season of 1876, regardless of the question whether or not the four hundred thousand feet agreed to be delivered in 1875 were or were not delivered in full. It evidently contemplated the possibility of a breach by the defendants of the contract of February, 1875, and provided that such breach should be excused to the extent of one hundred and fifty thousand feet, if the defendants should deliver the four hundred thousand feet in 1876. Still it left the first

contract in full force.   If the defendants had delivered or tendered the whole four hundred thousand feet under the first contract, as they might have done, there being more than thirty days of their time unexpired when the second contract was made, Pardee would. have been bound to accept and pay for them and to take the four hundred thousand feet in 1876 in addition, and if he had not become insolvent he could have required the defendants to deliver them.   Such an arrangement cannot be construed as an extension of time under the first contract, as to any part of the lumber deliverable under it. Each contract stood by itself with the stipulation, for the benefit of the defendants, that to the extent of one hundred and fifty thousand feet they should not be held for damages for a breach of the first, if they fully performed the second.

The first contract was in fact broken.   At the close of the season of 1875, the defendants were short in their deliveries one hundred and fifty-three thousand four hundred and ninety-five feet.   If they fully performed the second contract they would be relieved from liability for damages upon one hundred and fifty thousand feet of this shortage.   Consequently, as things stood at the close of the season of 1875, the right of action of M. F. Pardee was complete only as to three thousand four hundred and ninety-five feet, and was suspended as to one hundred and fifty thousand feet until it should be seen whether the defendants performed their second contract during the season of 1876.

About the opening of the season of navigation of 1876, M. F. Pardee, on April 22, assigned his property, including his claims under the above contracts, to his father, Myron Pardee, the present plaintiff, and then became insolvent.   The plaintiff continued the business through the agency of M. F. Pardee.

The defendants treated this insolvency as an abrogation of the contract of August 28, 1875, and without giving any notice of their intention not to perform it, sold their lumber on hand to other parties and ceased to buy more, and when applied to by M. F. Pardee and by the plaintiff to furnish the lumber, refused to do so and announced their intention not to furnish

any, assigning as reasons the failure of M. F. Pardee — that on learning it they had ceased buying and had but little— and denying the right of M. F. Pardee to assign the contract.

There was no consent on the part either of M.⸱F. Pardee or of the plaintiff to a rescission of the contract ; on the contrary, they insisted on its performance, M. F. Pardee offering guarantee of the payment of the price.

This action is not brought upon the contract for 1876, but for damages on the one hundred and fifty-three thousand four hundred and ninety-five feet shortage on the deliveries of 1875. As the sale for 1876 was on thirty and sixty days' credit, the insolvency of M. F. Pardee excused the defendants from delivering that lumber on credit, and entitled them to insist upon payment on or before delivery, but it did not abrogate the contract. On tender of the purchase-price, the defendants would have been bound, notwithstanding the insolvency, to deliver the lumber to the vendee or his assignee. It is not necessary now to consider what effect the conduct of the defendants in disabling themselves from performing the contract, without giving any opportunity to the purchaser to tender the price, and their absolute repudiation of any liability to perform the contract, would have had in an action on the contract for 1876. But it is quite clear that without some action on their part to put the plaintiff or his assignee in default for not accepting and paying for the lumber to be delivered under that contract, the defendants cannot take the benefit of it as a defense to their liability under the previous contract for 1875. No such default was shown. On the contrary the referee found, as matter of fact, that during the season of 1876, the plaintiff was at all times able, ready and willing to receive and pay for the lumber according to the terms of the contract of August 28, 1875. The defendants now seek to avail themselves of the insolvency of M. F. Pardee, not only to exempt themselves from liability for not delivering that lumber, but also to receive the same advantage as though they had in fact delivered it. This, we think, is claiming too much. The mere insolvency of one of the parties to a contract of sale is not equivalent either to a rescission or a breach. It simply

relieves the vendor from his agreement to give credit; and payment may be substituted. (*New England Iron Co.* v. *Gilbert El. R. R. Co.*, 91 N. Y. 153 ; Add. on Cont. [Am. ed.], § 471 ; Benj. on Sales [3d Am. ed.], § 759; *Freeth* v. *Burr*, L. R., 9 C. P. 208 ; *Bloomer* v. *Bernstein*, id. 588.)

But if the contract for 1876 was rescinded by defendants they could not claim or retain any benefit under it, and their liability under the contract of 1875 continued.

The order of the General Term should be reversed and the judgment entered on the report of the referee affirmed, with costs.

All concur.

Order reversed and judgment affirmed.