RAPPLEYE v. THE ·RACINE SEEDER COMPANY.

1.  **Assignment for Benefit of Creditors**: EFFECT UPON UNEXECUTED CONTRACT WITH MUTUAL OBLIGATIONS. Defendant entered into a contract with Y. Bros. to sell them a certain number of machines, for which payment was to be made by the promissory notes of Y. Bros. as the machines were delivered ; and in consideration thereof Y. Bros. were to have the exclusive sale of the machines in certain territory, and they were to canvass the territory for the sale of the machines, and to take cash or notes of the purchasers in payment, and to turn the cash and notes so taken over to defendant,—the cash to be indorsed as payment on the notes of Y. Bros., and the notes to be held as collateral security. After some of the machines had been sold by Y. Bros. and delivered to the purchasers under the contract, Y. Bros. became insolvent, and made an assignment for the benefit of their creditors, and defendant notified the assignee that it would regard the contract as ended, and would furnish no more machines thereunder, and afterwards it entered the same territory and sold the machines therein. This action is by the assignee to recover for a breach of the contract. *Held*—

    (1) That sections 2082 to 2087 of the Code, making all contracts assignable, refer only to the rights, in possession or action, of the holder by virtue thereof, and not to his obligations thereunder; and that, therefore, Y. Bros. could not, by reason of anything contained in said sections, by an assignment, compel the defendant to accept the assignee as their debtor instead of themselves.

    (2) That when Y. Bros. became insolvent, the defendant was no longer bound to furnish them the goods contracted for on credit, but had a right to declare the contract at an end, and that they could not, by the assignment, confer any greater right upon the assignee.

(3) It would *seem* (but it is not decided) that if the assignee had demanded the rest of the machines and offered to pay the cash for them, defendant would have been obliged to furnish them, and to comply with the contract in other respects.

2. ———: PERSONAL JUDGMENT AGAINST ASSIGNEE : WHAT IS NOT. In an action against the assignee of Y. Bros. for the benefit of their creditors, the judgment was that the claim "be and is hereby established as a claim against the estate of Y. Bros., and against the said R. as their assignee." *Held* not to be a personal judgment against R., but only an establishment of the claim.

*Appeal from Polk District Court.*—HON. JOSIAH GIVEN, Judge.

FILED, JANUARY 31, 1890.

ACTION for breach of contract in the sale of certain seeders, in which the court, without the intervention of a jury, found the following facts :

"*First.* That prior to October 14, 1884, the firm of Young Bros., the plaintiff's assignors, were a copartnership engaged principally as manufacturers' agents in the sale of agricultural implements throughout the state of Iowa, having their place of business at the city of Des Moines, in said state. *Second.* That on the nineteenth day of August, 1884, the Racine Seeder Company, of Racine, Wisconsin, the defendant herein, made with said Young Bros. the contract introduced in evidence, and marked 'Exhibit A,' as alleged in plaintiff's petition. *Third.* That by said contract the defendant sold to Young Bros. nine hundred Strowbridge Broadcast sowers, for which payment was to be made by the promissory notes of Young Bros. as implements were delivered, and in consideration for such purchase the defendant granted to said firm the exclusive privilege of selling said implements in the western half of the state of Iowa. Young Bros. were to canvass said territory and solicit written orders for said Strowbridge sower, in the name of the defendant, using blank orders prescribed by it; and the orders thus taken were to be turned over to the defendant, and thereupon the

implements were to be shipped by the defendant to the various purchasers, at the time stated in such orders. Young Bros. were further required to take promissory notes in settlement for implements thus sold, when sales were not for cash; and such notes were to be turned over to the defendant, in addition to the contracts before mentioned, as collateral security for the notes of Young Bros. If implements were sold for cash, the same was to be immediately applied by Young Bros. on the purchase price of the implements contracted for. *Fourth.* That, upon the faith of the above contract, Young Bros. proceeded to canvass the territory assigned them, taking orders for the said implements, and turning them over to defendant, and otherwise performing their part of said contract, and up to the fourteenth of October, 1884, had sold about three hundred of said implements, at prices varying from $16.50 to $18.75. Said contracts were identical in form with Exhibit A, hereto attached. *Fifth.* That on the fourteenth day of October, 1884, the said Young Bros. made a general assignment for the benefit of creditors to one Isaac Henshie, who continued to perform the duties of said assignee until his death, on December 8, 1884; that the record of the instrument found on pages numbers 10, 11, 12 and 13 of book number 154 of chattel mortgage records, in recorder's office of Polk county, Iowa, introduced in evidence, is a true copy of said general assignment; that by said assignment all rights under said contract of Young Bros. with defendant passed to said assignee; that the plaintiff in this cause is the successor in office to said Isaac Henshie as assignee of said Young Bros., duly appointed by the circuit court of Polk county, Iowa, on or about the thirteenth day of December, 1884. *Sixth.* That on the fifth day of November, 1884, the defendant sent to Young Bros.' recent place of business, by messenger, the letter of that date set out in defendant's answer herein, giving notice of its refusal to go on with the contract before mentioned; that the defendant

intended by the notice given in said letter to put an end to the contract entirely, and the same was understood and treated by the assignee of Young Bros. as so intended; that soon after the service of the above notice the defendants entered this same territory which had been granted by said contract to Young Bros., made new contracts, in its own name, with some of the persons with whom Young Bros. had contracted for the sale of said implements, and sold large numbers of the same to divers other persons in said territory. *Seventh.* That as soon as practicable after entering upon his duties as assignee of said Young Bros.' estate, the said Isaac Henshie sought legal advice with reference to his rights as such assignee under said contract, and was advised that he had a right under the law to go on with the same, and require performance thereof on the part of defendant; and there was evidence tending to show that he thereupon procured an agent to further canvass the territory named in said contract, and was otherwise arranging to go on with the same, when he received said defendant's letter of November 5, 1884, giving notice of its refusal to perform said contract. Such evidence was, in substance, that said assignee called in from the road one William Gracey, who had previously been employed by Young Bros. to sell said Strowbridge sower, the goods handled by Young Bros., in said territory; that said Gracey was subsequently in the city; and that the account book kept by the assignee showed an account with William Gracey, in which appeared the following entry : ' October 20, 1884. Commenced work at sixty dollars per month and expenses;' that said Gracey received money from said assignee, and subsequently took the two orders for thirty-five of said Strowbridge sowers, which were introduced in evidence, and marked 'Exhibit B' (22 and 23), but this was no evidence that the defendant had knowledge of these matters; that at the time said letter of November 5, 1884, was received from the defendant said assignee had not had a reasonable time in which to perfect

arrangements for going on with said contract. *Eighth.* That said Strowbridge Broadcast sower is a patented article, of which defendant was the sole manufacturer. About the month of February or March, 1885, however, a similar sower was put upon the market by the Joliet Wire Company of Joliet, Illinois, at less than this contract price; but this was · considered by defendant to-be an infringement on the Strowbridge patent. *Ninth.* That at no time has defendant either made or tendered to plaintiff, or to his predecessor in office, the said Isaac Henshie, or to said Young Bros., any compensation whatever for the labor or moneys expended by them, or for any portion of their performance of said contract, or made or offered in any manner to place the said persons, or either of them, *in statu quo.* *Tenth.* That defendant never delivered, nor tendered a delivery of, any portion of said nine hundred Strowbridge sowers sold to said Young Bros., although such delivery was demanded, to the number of said implements named in said orders turned over to said defendant, if such orders constituted a demand; and said defendant refused to deliver any portion of said implements, or to perform its part of said contract in any respect whatever. But no demand was made upon defendant for performance of said contract, unless the delivery of said orders constituted such demand. *Eleventh.* That neither the plaintiff nor his predecessor in office, the said Isaac Henshie, ever tendered the defendant any security in lieu of the promissory notes of Young Bros. agreed to be made, or made application to the court for authority to carry out said contract, or to require said defendant to accept any security in lieu of said notes, or gave defendant any notice that he intended to carry out said contract."

As a conclusion of law, the district court found for the defendant, and the plaintiff appeals.

*Cummins & Wright* and *N. B. Raymond,* for appellant.

*Lehman & Park,* for appellee

GRANGER, J.—I. The point receiving the principal attention in argument is as to the effect on the contract of the insolvency of Young Bros., and the assignment for the benefit of their creditors. Perhaps it may be better stated as a query, thus: Was the insolvency and assignment a justification for the defendant company in rescinding the contract? The answer to this question is a practical determination of the case, as to the plaintiff's cause of action. Its consideration has led counsel for appellant to consider at some length the law as to the assignment of contracts, and it is urged that the assignment in question is within its contemplation. A salient feature of the case is the manner or method of payment by Young Bros. for the seeders. The contract was for nine hundred seeders, to be delivered on the orders of Young Bros., for which the firm was to give its notes. Young Bros. were to deliver the seeders to purchasers from them, and settle for the same either by receiving cash or notes. If cash, it was to be turned over to defendant, to apply on the notes of Young Bros. If notes, they were to be turned over to defendant as collateral security for the notes already given by Young Bros.

<span style="margin-note">1. ASSIGNMENT for benefit of creditors: effect upon unexecuted contract with mutual obligations.</span>

It is said in argument that the district court held the rescission valid because, after the assignment, Young Bros. were not in a position to give their notes in pursuance of the terms of the contract; from which we infer this view of the court: That the defendant was entitled, under the contract, to the notes of Young Bros., aided collaterally by the notes taken by them in the sales of the seeders. As between defendant and Young Bros., nothing less could be regarded as a compliance with the contract. It could hardly be claimed that Young Bros., in a settlement for the machines, could substitute in lieu of their note that of another person or firm, regardless of the question of solvency or value, even though aided by the collateral notes as agreed upon, for the sole and conclusive reason

that their engagements are for notes signed by them. Such a rule needs no elaboration.

The argument, then, leads us to the query, without reference to the statutory assignment for the benefit of creditors, could Young Bros. have so assigned the contract, without the consent of defendant, as to substitute another in their stead for performance, and whose note must be accepted in lieu of theirs by the defendant? This leads us to consider the authorities cited. Counsel for appellant quotes from Code, section 2084, as follows: "Instruments in writing, by which the maker promises * * * to pay or deliver any property or labor, or acknowledges any money or labor or property to be. due, are assignable by indorsement thereon, or by other writing; and the assignee shall have a right of action in his own name." Counsel then say: ".Under the very broad language of this provision, this court has held that all contracts are assignable, even in cases where, by the terms of the instrument, its assignment is prohibited." And reference is made to *Moorman v. Collier*, 32 Iowa, 138, and *First Nat. Bk. of Dubuque v. Carpenter*, 41 Iowa, 518. Section 2084 is a part of the chapter on "notes and bills;" and the section deals only with instruments in writing, and tells how they may be transferred, and who may sue thereon. In both of the cases to which reference is made the court had under consideration the validity of the transfer of an instrument in writing for the payment of money; and the language used in each case is not too broad, if properly limited by the subject of its application. In *Moorman v. Collier*, the language relied on is that "all instruments, under our statute, are assignable;" and the statement takes as authority Revision, section 1796, which corresponds with section 2084 of the Code, and the language of the case is only as to "instruments." It does not say, "all contracts." The case evidently means all instruments for the payment or delivery of money, property or labor, as specified in the section and chapter. The case of *Bank v. Carpenter* was an action on a written guaranty, which was

held assignable ; and in its discussion this language is used : "Generally, by the common law, a guaranty is not negotiable, or in any manner transferable, so as to enable the assignee to maintain an action thereon. * * * But under our statutes this and every other kind of contract is assignable." It cites for support Code, sections 2082–2087, inclusive ; and it is said in the opinion that "even in a case where, by the terms of the instrument, its assignment is prohibited, it may be assigned." The sections referred to are the first six sections in the chapter on "notes and bills," which chapter, of course, has reference to other instruments than notes and bills, and the provisions, in brief, as to assignments are that a party entitled to recover on an instrument or an open account may transfer his right of recovery to another ; but there is nothing in the language of the chapter to indicate a legislative intent to authorize a party to a contract by assignment to transfer his obligations to perform to a third party, and thus effect his release, without the consent of his obligee. Let us suppose that A. contracts in writing to render service, as a traveling salesman, to B., for a specified compensation. Under the law, if B. shall be indebted to A. on the contract, A. may assign his claim. But suppose A. should assign his contract to C., whereby C. was to receive the pay and render the service. ·Must B. accept that? B. has contracted for the services of A. He is entitled to that ; and, before B. can be required to pay either to A. or his assigns, he must have what he contracted for. The law will permit a person to assign what is his, either in possession or by right of action, but not his obligations to another ; and such is the substance of the provisions of the statutes on the subject of assignments referred to. Thus we think that Young Bros. could not, without reference to the assignment for the benefit of creditors, have so assigned the contract in question, without the consent of the defendant, as to have required defendant to have accepted in lieu of theirs the notes of their assignee.

We may then inquire if there is anything in the statutory assignment for the benefit of creditors to change the rule? It is urged that the statutory provisions as to assignments for the benefit of creditors is broad enough to enable the assignee to execute any contract that might come into his hands. The difficulties of the case are not with the provisions of the statute as to the authority of the assignee. They are more with his incapacity or indisposition to execute the contract. We should not lose sight of the real question under consideration by a contemplation of what the assignee could have done if defendant, after insolvency, had been willing to deliver the seeders. It may be conceded that the contract could thus have been executed by the assignee on behalf of Young Bros. But the query is, had the defendant the right to refuse delivery of the seeders after insolvency and assignment? In other words, had it the right to terminate the contract? If it were a case of insolvency without the assignment, we think it would be conceded on authority that the obligation to deliver could only be on a tender of a cash payment in lieu of notes agreed upon. *Pardee v. Kanady*, 100 N. Y. 121. Does the fact of the assignment affect the rights of the defendant? The reason of the rule in cases of insolvency is too manifest to need explanation. A person who contracts to deliver property on credit, in anticipation of a solvent purchaser, ought not to be required to deliver it after insolvency, which is a practical confession by the purchaser of his inability to comply with the terms of the contract. If to the fact of insolvency is added that of an assignment for the benefit of creditors, why should the rule be changed? If the delivery is excused in case of insolvency because the property will not be paid for, the same reasons exist for excusing the delivery after assignment. If the insolvent did not possess a right to enforce the contract except by cash payment, he could convey no greater right to his assignee.

The argument deals with the question of the right of appellant to a delivery of the seeders upon cash payment therefor. To our minds, the record does not

present the question for consideration. The contract was not to pay cash, but to settle by note. After insolvency defendant was not required to anticipate a readiness for cash payment; and, if either Young Bros. or plaintiff desired to make such payment, a tender to that effect should have been made. Soon after the assignment, defendant, as it should, gave notice that because of the insolvency and dissolution of the partnership the contract was rescinded. This notice was to Young Bros. If the assignee then desired to pay in cash, and have the seeders delivered, the proposition or tender should have been made. But neither the pleadings in the case, nor the findings of the court, deal with this question. The case in the district court seems to have been tried upon an issue as to the right of the assignee to carry out the contract by giving his note in lieu of that of Young Bros. The pleadings and findings have to do with a willingness on the part of the assignee to carry out the contract; but it appears only to have been a carrying out of the contract as Young Bros. were authorized to do, and not by payments in cash. A reference to the eleventh finding shows that the assignee has never in any manner indicated to defendant a purpose or desire to secure or perform the contract. Insolvency, in such cases, implies an inability to perform, on which the defendant might rely until otherwise assured.

Appellant contends, with much zeal, that the mere fact of insolvency does not put an end to the contract of sale; and several authorities are cited in support of the rule. It is not necessary for us to state an opinion on a state of facts so broad. The case In re Steel Co., 4 Ch. Div. 108, cited by appellant, bears upon the question of when the facts will justify a seller on credit in refusing to deliver because of the subsequent insolvency of the purchaser. The facts in that case are that the Carnforth Iron Company, in October, 1874, contracted to supply iron to be delivered monthly, and to be paid for in installments, but on credit. The installments were delivered till in February, 1875, when the purchasing

company called a meeting of its creditors, and said it was carrying on business at a loss, and was short of capital, and asked for an extension of time, which the creditors refused. The selling company then refused to deliver the iron except upon cash payments, and the purchasing company then rescinded the contract. The selling company then asked for damage, which the court held could not be recovered; holding that there was no such declaration of insolvency as to justify the selling company in refusing to deliver. The syllabus of the case, which appears to be supported by the opinion, deduces a rule as follows: "In order to justify the vendors, in such a case, in exercising their right of refusal to deliver, there must be such proof or admission of the insolvency of the purchasers at the time as amounts to a declaration of intention not to pay for the goods." The case does not appear to be an authority against the right of refusal to deliver where the fact of insolvency exists, and is so evidenced as to amount to a declared purpose not to pay. It is the fact of the insolvency that seems to be the turning point in the case, and that would surely seem to be the reasonable rule. The case of *Morgan v. Bain*, L. R. 10 C. P. 15, also cited by appellants, was one for the delivery of iron on credit; and the purchasers became insolvent. Lord COLERIDGE, C. J., in his opinion, said: "It is not disputed that upon the occurrence of insolvency the vendor would not be bound to deliver to the insolvent purchaser an installment of the iron becoming due, without a tender of the price." BRETT, J., in the same case, said, without committing himself to the theory that the mere fact of insolvency would *per se* put an end to the contract, that such fact, with that of notice to the seller of the insolvency, would justify an assumption by the seller that the purchaser intended to abandon the contract. The notice upon which he relied, and gave his adherence to the holding in that case, was the commencement of insolvent proceedings under the bankrupt act. In this case the fact of the insolvency is unquestioned, and a like notice is given by an insolvent

Rappleye v. The Racine Seeder Co.

proceeding for the benefit of creditors. Hence it seems the defendant, in this case, is within any of the rules cited. Other authorities cited by appellant are not more favorable to his position.

II. Defendant presented a counter-claim, based on an open account, alleging a balance due of $27.98, as to which the court established a claim against the estate of Young Bros. for twenty-seven dollars, based on the following finding of facts: "*Twelfth.* On defendant's counter-claim, the court finds that defendant received orders from Young Bros. for the goods mentioned in the account under dates September 5, 6, 8, 15 and 17, 1884; that these orders were treated in the usual way, the usual directions given for shipping, and the goods charged on the books to Young Bros.; that both of Young Bros. were on the witness stand, and neither of them denied having received the goods; that, the balance of defendant's counter-claim not being denied, the defendant should recover the sum of three hundred and twenty-seven and ninety-eight one-hundredths dollars, less the sum of three hundred dollars due the plaintiff for commission earned by Young Bros. under the contract of 1883, declared on in plaintiff's petition." It is urged that the proofs are not sufficient to sustain the finding. The argument concedes a practical dispute in the testimony, and the finding has the force of a verdict by the jury. The evidence is such that we cannot interfere.

III. It is next said that it was error to enter a personal judgment against the assignee. The assignment is in these words: "The court erred in rendering a personal judgment against the plaintiff herein for the balance due upon defendant's counter-claim, for the reason that such judgment is contrary to law and the evidence. Said defendant was entitled only to the establishment of his claim as a creditor of said estate." The assignment is not sustained by the record. The judgment of the court is merely the establishment of a claim against the estate. It is not a personal judgment. It would

2. ——: personal judgment against assignee: what is not.

only be subject to *pro rata* payment, like other claims. The wording of the judgment is "that such be and is hereby established as a claim against the estate of Young Bros., and against the said Rappleye as their assignee." These words have no other meaning than the establishment of the claim. It would appear that appellant has based this assignment rather upon statements in the abstract with reference to the judgment than upon record of the judgment as copied in the abstract.                                    AFFIRMED.