## Sargent Glass Company *v.* Matthews Land Company.

[No. 4,888. Filed November 29, 1904. Rehearing denied February 3, 1905. Transfer denied March 9, 1905.]

1. Contracts.—*Assignability.—Special Finding.*—Where a glass company agreed in writing to erect and operate a factory of a certain capacity for an indefinite time in consideration that a land company would donate to it certain lots and furnish it natural gas free so long as obtainable, and construct a railroad switch to its factory, and when the factory was completed the parties entered into a supplemental contract in writing providing therein that the first contract should not be changed thereby, and also providing that such "contracts are not transferable," and there was oral evidence to show that the first contract was preliminary and that it was orally agreed that it should not be assignable, a finding that such contracts were not assignable will not be disturbed. p. 50.

2. CONTRACTS.—*Assignability.*—*Receiver's Sale.*—Where a contract is not assignable, a purchaser of such contract rights at a receiver's sale gets nothing.  p. 53.

3. SAME.—*Assignability.*—Where a contract is by its terms silent as to its being assignable, and it imposes upon each party a continuing obligation in favor of the other, and the character of the assignor and his ability to be of assistance to the other party was an inducement in the execution of the contract, such contract is not assignable. p. 53.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by the Sargent Glass Company against the Matthews Land Company.  From a decree for defendant, plaintiff appeals.  *Affirmed.*

*J. M. Winters, M. A. Downing, A. C. Harris* and *F. C. Cutter,* for appellant.
*Paul Brown, J. L. Custer* and *O. L. Cline,* for appellee.

BLACK, J.—The appellant sued the appellee, alleging in the complaint that the Indiana Lead Glass Company, September 14, 1900, entered into an agreement with the appellee, which was set out in the complaint.  By its terms the appellee agreed to convey to the Indiana Lead Glass Company, designated in the contract as the party of the second part, by good and sufficient warranty deed, certain described lots in the first addition to Matthews, Grant county, Indiana, "to be used for factory purposes only as hereinafter stipulated; deed to be executed and delivered to said party of the second part when the factory is built and in operation;" also, three residence building lots, to be selected by the party of the second part from any of the platted lots unsold in the town of Matthews.  The appellee also agreed to furnish natural gas, free of cost, for the manufacture of glass and for operating said factory upon said land, as long as natural gas is obtained on the lands and leases of the appellee at and in the vicinity of that town, and to deliver said gas through appellee's gas-mains to the property line of said land.  The appellee also agreed

to have a named railroad company lay a side-track along the side of, and convenient to, the factory, without cost to the party of the second part. The party of the second part agreed to commence the construction and equipment of a lamp chimney factory on said land on or before October 15, 1900, and to complete the construction of the factory, and to commence manufacturing lamp chimneys, without unnecessary delay, and to continue to operate the factory during the ordinary period each year. It was alleged in the complaint that the principal inducement to the Indiana Lead Glass Company to the making of this agreement was the fact that under and by the terms thereof the appellee agreed to furnish to the Indiana Lead Glass Company natural gas free of cost, for the manufacture of glass, and to operate the factory upon certain lands to be donated by the appellee, as long as natural gas is obtained on the lands and leases of the appellee at and in the vicinity of Matthews, and to deliver the gas through its gas-mains at the property line of the land. The complaint proceeded, alleging the construction, equipment and completion of the lamp chimney factory, at great expense, by the Indiana Lead Glass Company, which upon the completion of the factory commenced, without unnecessary delay, to manufacture lamp chimneys, as provided in the contract, and so continued during the ordinary period of each year, until on or about June 1, 1902, when, on the application of certain creditors of the Indiana Lead Glass Company to the judge of the Grant Superior Court, David C. Searles was appointed receiver for that company, and directed to take possession of all of its property, and to continue the operation of its plant; that the receiver, under the direction of that court, continued the operation of the factory, during the ordinary working period of the year, until August 19, 1902, when, by direction of that court, he, as such receiver, having given notice as required by the order of the court, proceeded to sell at auction all the rights and property, real

and personal, and choses in action of the Indiana Lead Glass Company, and sold, assigned, transferred and delivered the same, including said contract, to George W. Ansted, to whom the receiver, under the order of the court, executed a deed to all the realty of said corporation, including that described in said contract, and a bill of sale of all personal property, letters patent, trade-marks and choses in action of said corporation, and the sale was duly confirmed and approved by the court August 21, 1902, when Ansted took possession of the plant; that the next day the appellant was duly incorporated as a manufacturing company, and August 23, 1902, Ansted sold, transferred, assigned and delivered to it all of said property, including said contract; that, upon such purchase and the receipt and taking possession of the property, the appellant assumed, and proceeded to carry out, all of the conditions and requirements of said contract between the Indiana Lead Glass Company and the appellee; that this contract, and the right to free gas under it, constituted one of the main inducements to the appellant in making the purchase, and upon taking possession it immediately proceeded to expend, with the knowledge of the appellee and without objection from it, large sums of money upon extensions and new and improved machinery therein.

The complaint showed that on and prior to March 1, 1901, the appellee deeded the real estate to the Indiana Lead Glass Company, and then and thereafter caused the side-track to be laid without cost to that company, and that the appellee fully complied with the terms of the contract, except as afterward in the complaint stated; that the Indiana Lead Glass Company and the receiver and Ansted and the appellant successively complied literally on their part with all the requirements of the contract. It was alleged that the appellee was organized and incorporated for the purpose of purchasing the land upon which the town of Matthews was located, and of building a town or city

thereon, for the purpose of enhancing the value of the land, and to that end it purchased all the land, and invited, and continues to invite, numerous manufacturing concerns to locate their factories at that town or upon adjacent territory belonging to the appellee, and, in consideration of removal of such factories, the appellee has made a practice of deeding land to the proprietors and building switches and furnishing gas to such factories free of cost, to the end that the population of the town may be increased and the value of the land of the appellee enhanced thereby, and said contract was made with the Indiana Lead Glass Company pursuant to such general policy of the appellee; that appellant's factory is constructed for the use of natural gas only as a fuel, and, in pursuance of the contract, the appellee supplied natural gas for fuel to the appellant, and its factory could not be changed so as to use any other fuel without great and permanent loss to the appellant, incapable of actual measurement; that from the time of said contract the flow and supply of such gas in the wells and territory of the appellee is and always has been sufficient for all the purposes thereof; that the appellant's business is the manufacture of lamp chimneys alone, and without free fuel it is impossible to manufacture them at that town at a profit; that the supply of gas furnished by the appellee is irregular, unsatisfactory and insufficient to operate its factory, because of which the appellant has repeatedly notified the appellee, and demanded that gas be supplied as provided by said contract; that in response appellee notified appellant that its supply was too small because its pipes were insufficient in size, whereupon appellant caused new and enlarged gas fittings to be placed in its factory; that the pipe between appellee's main and the property line is a two-inch pipe, which could be replaced by a four-inch pipe at small cost, and the appellant has demanded such a change, but the appellee has failed and refused to make

such change; that it is impossible to continue the appellant's manufacturing business without a greater supply of gas than it is receiving.    Various particular sources of loss through such insufficiency of gas are stated, and it is alleged that the appellee has repeatedly threatened to cut off and discontinue the appellant's supply of gas for fuel.    Prayer, that the appellee be required to perform its contract, and enjoined from withholding a sufficient supply of gas, and be ordered to put in between its main and the property line, without discontinuing the supply of gas, a pipe not less than four inches in diameter, and sufficient to supply the appellant, and to maintain a pressure in its service-pipes sufficient to supply natural gas for fuel to operate the factory, and for a perpetual injunction prohibiting the appellee from withholding from the factory sufficient gas for fuel to operate the factory so long as natural gas is obtained upon the lands and leases of the appellee, etc.    The appellee answered by general denial, and upon trial by the court there was a finding in favor of the appellee, and a temporary injunction which had been in effect pending the final hearing was dissolved.

1.    It appeared in evidence that the receiver executed his bill of sale August 21, 1902, to Ansted, who, August 23, 1902, executed his bill of sale to the appellant.    On September 5, 1902, the appellee gave the appellant a written notice that the appellee would not and did not recognize the appellant as the successor of the Indiana Lead Glass Company to any right or rights under a certain contract made by and between it and the appellee September 14, 1900, and did not recognize the appellant as the successor to any right or rights under a certain contract entered into by and between the Indiana Lead Glass Company and the appellee, December 28, 1900, "both of said contracts having relation to the furnishing of gas to the factory of said Indiana Lead Glass Company," at Matthews; also, that the appellee "will not and does not furnish you any gas for the factory.

formerly owned by said Indiana Lead Glass Company, and now owned by you, under either of said contracts, and that any and all gas you may use from the gas line of" the appellee "you are using without any right whatever;" also, that the appellee "will demand and collect of you the market value of any and all gas used by you from its mains or pipe-lines," and that the appellee "is ready and willing to shut off the gas from said factory now owned by you, upon notice from you so to do." The appellee, however, continued to furnish gas to the appellant, and October 15, 1902, this suit was commenced.

The evidence showed that, besides the written contract set forth in the complaint, the parties thereto also executed another contract, dated December 28, 1900, which was admitted in evidence over the objection of the appellant, the grounds of objection stated being that the proposed evidence was not within the issues on trial, and that the latter contract was without consideration. This supplemental contract of December 28, 1900, signed by the Indiana Lead Glass Company and the appellee, was for the most part in printing, in the form ordinarily used by the appellee and its customers in contracting for the supplying of natural gas by the former to the latter, being an order or request from the Indiana Lead Glass Company, addressed to the appellee, directing it to connect its natural gas-mains with the factory subject to conditions on the back of the contract, the contract to be binding when signed by the appellee.

When the factory was completed, the president and the treasurer of the Indiana Lead Glass Company called upon the general agent of the appellee at Matthews, and notified him that the factory was completed and ready for operation, whereupon the general agent delivered a draft of the supplemental contract to said treasurer, who said he wished to submit it to the legal adviser of the Indiana Lead Glass Company, and thereupon took the draft of the contract to Indianapolis. Afterward he returned it to the president of

that company at Matthews, with a letter asking the president to cause certain erasures of portions of the printed matter, and to insert in the contract certain written matter. These changes were accordingly made before the execution of the supplemental contract. The written matter there inserted was as follows: "It is agreed by and between the parties hereto that the signing of this contract shall not in anywise change, alter, vary or impair any of the rights and privileges reserved to said Indiana Lead Glass Company under and by virtue of the terms of a certain contract executed by and between the Matthews Land Company and the Indiana Lead Glass Company, which bears date September 14, 1900, and that said contract shall be and remain in full force and effect according to its terms and conditions."

In the supplemental contract as executed there were some erasures of printed matter on the face thereof, and a number of printed "conditions" on its back were erased. Among the conditions not erased was the following: "Contracts are not transferable." The contention here between counsel relates chiefly to this provision in the supplemental contract. There was evidence introduced, to which no ground of objection appears to have been offered, that at the time of the making of the original contract it was orally agreed between the parties thereto that it was a preliminary contract, and that later on, when the factory was ready to be connected with the gas supply, another contract to cover the gas supply should be executed by the parties. There was also evidence to the effect that at the time of the execution of the original contract it was the orally expressed understanding of the parties that it was not assignable.

It is not claimed or pretended that at the time when the appellee was notified of the completion of the factory it refused further to carry out the contract without a modification thereof, and that thereupon the Indiana Lead Glass Company, to prevent litigation and by way of compromise of such matter, consented to an essential change of the con-

tract and entered into a supplemental agreement materially modifying the original contract, and that thereupon the parties proceeded to act upon and carry into effect such materially different contract. On the contrary, it is claimed on behalf of the appellee, in effect, that the case is one wherein the parties in the execution of the supplemental contract and proceeding thereafter to operate the factory and to receive natural gas therefor, on the one hand, and to furnish gas free of cost on the other hand, were carrying into effect their original understanding and intentions, and by their conduct placing their own construction upon the original written agreement as a nonassignable contract. The evidence warrants the conclusion that the original parties did, as between themselves, by their acts and proceedings, construe the contract under which the factory was supplied with natural gas free of cost as a contract not assignable.

2. If, as between the parties, the contract was not assignable, we see no sufficient reason for holding that the receiver, by his transfer of the contract, could confer upon the purchaser greater rights against the appellee than were held under the contract by the insolvent Indiana Lead Glass Company. So to hold would seem to be making a new contract for the parties without the consent of one of them.

3. The original contract was not by its terms assignable. After the real estate had been conveyed by the appellee, and it had caused the side-track to be constructed, and the Indiana Lead Glass Company had constructed its factory, all in accordance with the contract, it was not yet fully executed. There remained thereafter continuously obligations of both parties to be performed in the future. The appellee was to supply natural gas free of cost, for the operation of the factory, and the other party was to operate the factory as a lamp chimney manufactory during the usual period each year, which would require the superintendence of the officers of the corporation, and the presence of its

workmen at the town of Matthews. The appellee was a corporation whose principal interest appears to have been to secure the building and operation by others of factories upon its lands, and to induce the coming in of inhabitants, and thus to cause the enhancement of the value of its lands, and enable it to dispose of said lands at increased prices, and to supply the people of the town with natural gas at a profit to itself. It can not be supposed that it was induced to convey a considerable portion of its lands, and to construct railway tracks, and furnish its natural gas in large quantity for manufacturing purposes, all free of cost, without reference to the supposed character of the managing officers of the donee, as well as the nature and extent of the employment to be given to its workmen, and to the apparent ability of the donee to contribute to the introduction and retention of suitable inhabitants, and thereby to help to build up the town and enhance the interests of the appellee therein. The appellee, without doubt, would exercise a choice between proposed acceptors of its donations, and the element of confidence in the persons or corporations seeking such encouragements, as well as in the projected industries which they proposed to introduce, would constitute a material inducement to the appellee in the making of such a contract. The appellee might be willing to transfer absolutely certain tangible property to be built upon by a particular corporation selected by the appellee, with right to convey the same to others, and yet might deem it unwise, unbusinesslike.and unduly venturesome to engage to furnish fuel without cost for the operation of the factory in the indefinite future to any other person or corporation to whom the donee, without regard to the consent or wishes of the donor, might transfer the property.

The difference between the benefit to be derived by such a corporation as the appellee from the future carrying on of the manufactory by the particular corporation to which it engaged to furnish free gas, and the consequence to the ap-

pellee of the conducting of the factory by some or any other corporation that should purchase the property from the donee, might be slight or great, and it would be impossible definitely to estimate it in advance, but that such possible difference would probably have weight with the donor must be supposed.

In *Sprankle* v. *Trulove* (1899), 22 Ind. App. 577, we had occasion to discuss this subject, and did so at some length, citing a number of authorities, in addition to which we may refer to *Rappleye* v. *Racine Seeder Co.* (1890), 79 Iowa 220, 44 N. W. 363, 7 L. R. A. 139; *Worden* v. *Chicago, etc., R. Co.* (1891), 82 Iowa 735, 48 N. W. 71; *Harper* v. *Dalzell, etc., Co.* (1892), 27 W. L. Bull. (Ohio) 274; *Robinson* v. *Drummond* (1831), 2 Barn. & Ald. 303; *Ross* v. *Fox* (1867), 13 Grant Ch. 683.

Whether, in the exercise of its legitimate discretion, a court of equity could find it proper to grant all the relief prayed for by the appellant, or any part thereof, under circumstances such as are stated in the complaint, we need not now determine. The case at bar is submitted to us upon the evidence all of which appears in the record by bill of exceptions, and we are to determine what is right and proper upon the whole case, as provided by section eight of the act of 1903 (Acts 1903, p. 338) concerning proceedings in civil procedure.

We think we may consider the supplemental contract as having been regarded by the parties thereto as not in conflict with the original contract, and that its introduction in evidence, with proof of the acts of the parties after its execution, tended to show not that they had made inconsistent contracts, but that by their conduct they construed as not assignable the original contract, capable of such construction by them; and, considering such construction by the parties in connection with the terms of the original contract and the character of the interests of the parties which it was thereby intended to subserve, we may properly coincide

with the conclusion of the trial court that the promise to furnish gas free of cost to the Indiana Lead Glass Company did not pass and inure to the benefit of the appellant. And so, upon the whole case, we can find no occasion for disturbing the judgment of the court below.

Judgment affirmed.