The Dwelle-Kaiser Company, Respondent, *v.* Ætna Casualty and Surety Company, Appellant.

Pleading — contract — insolvency of contractor engaged in building public school — completion of work by surety company which took assignment of all moneys due or to become due on contract — performance of subcontract by plaintiff in ignorance of insolvency of contractor — action against surety company to recover contract price — complaint dismissed as not stating cause of action.

1. A complaint does not state facts sufficient to constitute a cause of action which merely alleges that defendant, the surety upon the bond of a contractor engaged in the construction of a school house, knowing that said contractor was insolvent, took from it an assignment of all moneys due or to become due on the contract and placing its representatives in charge of the business completed the work, in the course of which it caused the contractor to direct the plaintiff to furnish the glass and glazing for the school in accordance with a subcontract previously entered into between the contractor and plaintiff, and that plaintiff in ignorance of the contractor's insolvency, that its business was being conducted by defendant and that the amount unpaid by the city would be insufficient to pay for the completion of the work, furnished the material and performed the work required by its subcontract; that upon completion of the work the defendant received from the city all sums due upon said contract which it applied in payment of moneys it had advanced to complete the work and that the acts of the defendant were done with the intent of causing the contract to be completed without payment to plaintiff for its labor and materials and to save itself harmless from the obligation of its bond.

2. The plaintiff was under contract with the contractor to furnish the glass for the school house and was not relieved by the latter's insolvency from the duty of furnishing the labor and materials contracted for.

If by the terms of the subcontract credit were to be given, plaintiff could, upon learning of the insolvency, have demanded cash payment, or it might have protected itself by filing a lien as prescribed by section 5 of the Lien Law, but the defendant was under no duty to keep the plaintiff informed of the financial condition of the contractor or of the status of the work in payments. Neither was it guilty of any wrongdoing or of any overreaching in protecting itself from loss instead of protecting subcontractors so long as there was no deception, false representation, or misleading conduct.

*Dwelle-Kaiser Co.* v. *Ætna Casualty & Surety Co.*, 211 App. Div. 369, reversed.

(Argued December 16, 1925; decided January 12, 1926.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 2, 1925, which reversed an order of Special Term granting a motion by defendant for judgment on the pleadings and denied said motion.

*Edward L. Robertson* for appellant. The complaint was properly dismissed as it did not state facts sufficient to constitute a cause of action. (*People's Bank* v. *Bogart*, 81 N. Y. 101; *Brackett* v. *Griswold*, 112 N. Y. 454; *Reis* v. *Port*, 162 App. Div. 461; *Conkling* v. *Weatherwax*, 181 N. Y. 258; *Posuer* v. *Rosenberg*, 149 App. Div. 272; *Dickison* v. *Tysen*, 125 App. Div. 740; *Lent* v. *N. Y. & M. R. R. Co.*, 130 N. Y. 504.)

*W. C. Carroll* for respondent. The decision and judgment of Special Term dismissing the complaint were properly reversed by the Appellate Division. (*Hanna* v. *Florence Iron Co.*, 222 N. Y. 290; *Pardee* v. *Kanady*, 100 N. Y. 121.)

CRANE, J.   The Appellate Division has certified to us the question, " Does the complaint herein state facts sufficient to constitute a cause of action? "

The Schaeffer Construction Company had a contract with the city of Syracuse to build a public school. The Maryland Casualty Company furnished a bond to the city

of Syracuse, or became the surety upon a bond to the city of Syracuse conditioned that the Schaeffer Construction Company would perform its contract. We will not mention the Maryland Casualty Company again, as its place was taken, so far as this complaint is concerned, by the defendant, the Ætna Casualty and Surety Company. The Dwelle-Kaiser Company had a sub-contract from the Schaeffer Construction Company to furnish the glass and glazing for the school house.

Out of these relations has grown the plaintiff's cause of action set forth in substance as follows:

The Schaeffer Construction Company in the performance of its work on the Syracuse school house became insolvent; and the money coming from the city of Syracuse was insufficient to pay for the completion of the work. The Ætna Casualty and Surety Company knew of this condition and procured from the Schaeffer Construction Company an assignment of all moneys due or to become due from the city of Syracuse on the contract. The complaint further alleges that the Schaeffer Construction Company continued the work and completed the school house after the defendant, the surety company, had taken charge of the construction company, by placing its representatives in charge of the business and as directors of the company. The Schaeffer Construction Company ordered and directed the plaintiff to furnish the glass and glazing for the school, according to its contract. The complaint alleges that the defendant did this ordering or directing through the Schaeffer Construction Company, and that at the time, to wit, the fifth day of February, 1921, the plaintiff was ignorant of three things: one, of the Schaeffer Construction Company's insolvency; two, that the amount unpaid by the city of Syracuse would be insufficient to pay for the completion of the work; three, of the fact that the Schaeffer Construction Company's business was being conducted by the defendant. A further allegation states that upon the completion of

the contract the defendant, surety company, received the money from the city of Syracuse to repay it for the moneys which it had advanced to complete the contract. Finally, the plaintiff alleges that the acts of the defendant were with the intent and purpose of causing the contract to build the school house to be completed without payment to this plaintiff for the glass work and to save itself harmless from its obligation on the bond. The damage claimed is the contract price of the glass work.

In this brief statement of the important parts of the complaint it will be noted that the plaintiff relies entirely upon its ignorance, static ignorance, not induced ignorance, that is, it relies on no act performed or omitted by reason of false representations made by the defendant. The complaint of the plaintiff is, that the surety company protected itself for moneys to be advanced by it to complete the contract by taking an assignment of the moneys to become due from the city of Syracuse, instead of warning the plaintiff that the construction company had become insolvent.

The Dwelle-Kaiser Company was under contract with the Schaeffer Company to furnish the glass for the school house. The Ætna Casualty and Surety Company was under no duty to keep the plaintiff informed of the financial condition of the contractor or of the status of the work in payments. Neither was the bonding company guilty of any wrongdoing or of any overreaching in protecting itself from loss instead of protecting sub-contractors so long as there was no deception, false representation, or misleading conduct.

The Lien Law (Chap. 38 of the Laws of 1909 [Cons. Laws, ch. 33]), as amended, gave to this sub-contractor for the glass work a lien for the value or agreed price of its work or materials upon the moneys of the city of Syracuse applicable to the construction of the school house, to the extent of the amount due the contractor on a contract upon filing a notice of lien as prescribed in the article (Sect. 5).

As against this lien, the assignment to the Ætna Casualty and Surety Company by the Schaeffer Construction Company would be unavailable. Section 16 of the Lien Law provides that no assignment of any money to become due on such a public contract shall be valid unless it be filed within ten days with the head of the department having charge of the construction and with the financial officer of the city charged with the custody and disbursement of the corporate funds applicable to the improvement. The plaintiff, therefore, had its remedy and protection afforded by law. There is no allegation or even implication that it was misled into neglecting to file a lien by reason of anything done by the surety company. Neither the assignment to the surety company nor the insolvency of the contracting company in any way influenced the plaintiff, as the complaint alleges complete ignorance of these matters. The gist of the entire cause set up in the complaint is that the plaintiff went ahead with its contract thinking the construction company was solvent when it was not, and that the surety company was guilty of wrongdoing in taking an assignment to protect itself without informing the plaintiff of the insolvency of the construction company.

The position of the surety company in this respect is no different than that of the Schaeffer Construction Company. What were the relative duties of the contractor and its sub-contractor in case of insolvency? There was no duty upon the part of the contractor to reveal its insolvency, as that fact would not have relieved the sub-contractor from performing its contract. The terms of the sub-contract are not alleged in the complaint, but if credit were to be given to the contractor for the glass work, the sub-contractor, upon learning of the insolvency could have demanded cash payment. It did not relieve the sub-contractor, however, from the duty of furnishing the material and labor contracted for. There is no allegation in the complaint that the plaintiff demanded

cash or was deceived by anything that the parties did into waiving this right. The allegations amount to this:

The plaintiff performed its contract and furnished the glass work relying upon the solvency of the Schaeffer Construction Company. Later it found out that the company was insolvent and that the surety company had finished the work through its agents and had taken an assignment of the moneys from the city of Syracuse on the contract to reimburse it for advances made. It is alleged that the insurance company took the assignment and finished the work with intent to get the plaintiff's property without paying for it. What the surety company did, it had a right to do, and what the plaintiff did it was already under obligation and contract to do.

This is not a case where a person purchases goods from another being at the time insolvent and with the present intent not to pay for them. (*Hotchkin* v. *T. N. Bank*, 127 N. Y. 329, p. 338.) The glass work was not obtained by the surety company; it was furnished by the plaintiff under pre-existing contract. Insolvency and intent could not affect its obligation except to the extent of permitting it to demand cash payment for materials furnished.

In *Pardee* v. *Kanady* (100 N. Y. 121, at p. 126) this court said: " The mere insolvency of one of the parties to a contract of sale is not equivalent either to a rescission or a breach. It simply relieves the vendor from his agreement to give credit, and payment may be substituted." And in *Hanna* v. *Florence Iron Co.* (222 N. Y. 290, at p. 295) this court again held: " Mere insolvency of one of the parties to a contract does not relieve the other party from performance thereof and would not excuse the refusal of defendant to carry out its contract." The effect of insolvency was also stated in *Morris* v. *Talcott* (96 N. Y. 100, 107) in these words: " It is well settled in this state that an intent to defraud cannot be imputed to a party who contracts a debt knowing that he is

insolvent, merely from the fact of his insolvency, and his omission upon a purchase of property upon credit to disclose such condition to his vendor."

The analysis of the complaint in the light of these authorities renders it necessary for us to answer the question of the Appellate Division in the negative. The order of the Appellate Division should, therefore, be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN ANDREWS and LEHMAN, JJ., concur.

Ordered accordingly.